**Mrs. Lucy Turner WHITAKER, as Administratrix of the Estate of Willie Turner, Deceased, Appellant and Cross-Appellee,**

v.

**BLIDBERG ROTHCHILD COMPANY, Inc., Appellee and Cross-Appellant.**

No. 8449.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 13, 1961.

Decided Nov. 20, 1961.

Sidney H. Kelsey, Norfolk, Va., for appellant and cross-appellee.

Robert M. Hughes, III, Norfolk, Va. (Harry E. McCoy, and Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellee and cross-appellant.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and NORTHROP, District Judge.

PER CURIAM.

While serving as a member of the crew of the S. S. Southport, Willie Turner, a 34 year old seaman, disappeared at sea on February 15, 1959. His mother, Mrs. Lucy Turner Whitaker, as administratrix of the decedent's estate, brought suit on behalf of herself and the maternal grandparents against the vessel and the owners. However, no evidence of dependency was offered as to the latter.

The parties are in agreement that Turner met his death by suicide. It is also undisputed that earlier on that day he had shown signs of extreme depression and mental derangement. Apparently realizing his abnormal condition, Turner asked the master to chain him to his bunk to restrain him from "doing something desperate." This request was complied with but later, at his instance, he was released from restraint and within a few hours ended his life by going overboard, after carefully laying out his shoes and cap by the stern railing. The shipowner's liability is not contested; the only issue is as to the amount of damages awarded by the District Court to the seaman's mother, $17,500. The award is under double attack—by the libellant as insufficient and by the libellee as excessive.

There is sharp conflict in the evidence as to Turner's earnings and the extent of the mother's dependency upon him. Both in the District Court and on appeal the administratrix stressed that at the time of her son's death he was earning $525 per month, or at the rate of $6,300

per year. She claimed that he was regularly contributing approximately $300 a month to her support, occasionally by allotments from wages but more often by cash payments. The Judge observed that failure to make regular allotments was not significant in this case, because the vessels on which Turner was usually employed in the three years before his death sailed between Norfolk and Baltimore and he had frequent opportunity to visit his mother in Norfolk and make payments to her direct. The shipowner, on the other hand, stressed that the actually proved earnings during the several years preceding the man's death were much less than $6,300 per annum. The shipowner's testimony showed that Turner's earnings as a seaman ranged from $1,800 per year if averaged over six years, to $2,400 per year if averaged over three years. There was, however, evidence that during the period he earned additional sums ashore, and it was argued that his earnings as a seaman were rising. The Judge concluded that it was unlikely that the earnings in any year preceding the year of Turner's death exceeded $3,600, and he adopted this figure as a basis for further calculations.

The mother was unable to produce documentary proof of regular contributions but sought to support her claim by computing her total living expenses, estimated at $380 a month, from which she deducted $80, her monthly earnings as a housemaid. She asked the court to infer that the remaining $300 must have come from her son. However, in light of the findings as to the man's total earnings, the Judge estimated Turner's monthly contributions to his mother's support at $140.

■ In reaching the final award, the Judge took into account the joint expectancy of Turner who was 34 at the time of his death and of his mother who was then 52 years of age, applied standard annuity tables and appropriately computed the present value of the periodic payments. The libellant takes strong exception to the Judge's giving any weight whatever to mental illness as a limiting factor in estimating damages. She contends that there was no evidence of such illness before the fatal day and that many who suffer even severe attacks recover and are able to pursue their callings with earnings undiminished. She further contends that few who attempt suicide and fail ever repeat the attempt. These hypotheses are all fairly arguable, yet it was not improper for the Judge to take into consideration that such illness could well have affected the man's future earning power and, indeed, might have terminated earnings altogether if he had been restrained from suicide on this occasion but had successfully repeated the attempt at a later date.

■ Naturally the administratrix emphasizes the features of the testimony that would justify a larger award and the shipowner points to the evidence indicating a lesser one. No issue of law is involved. The task of the District Judge was one of balancing the various considerations urged upon him by the parties respectively in estimating future probabilities which are in their nature insusceptible of exact demonstration. A margin of uncertainty is inevitable when one is called upon not only to resolve discrepancies in the evidence of past happenings, but also to look into the future. Indeed, no award for loss of future earnings is entirely free of speculative elements, and this is a problem that arises every day in the course of litigation. Insistence on mathematical precision would be illusory and the judge or juror must be allowed a fair latitude to make reasonable approximations guided by judgment and practical experience. Both the libellant and the libellee in this case called on the Judge to make a judgment involving to some extent a forecast of events unborn. While another trier of the facts here might have balanced off somewhat differently the various relevant considerations, the overall result reached by the court seems to us reasonable and just. By no means can we call it "clearly erroneous."

The decree will be

Affirmed.