18870

Marion JONES, Administrator of the Estate of Susan Cranston Jones, Respondent, v. Robert V. DAGUE and Scott Burgoon Dague, by his Guardian *ad Litem*, Robert V. Dague, Appellants.

*(166 S. E. (2d) 99)*

262

*Felix B. Greene, Jr., Esq.,* of Beaufort, *for Appellants,*

263

*Messrs. Dowling, Dowling, Sanders & Dukes,* of Beaufort, *for Respondent,*

February 17, 1969.

Lewis, Justice.

This action was brought for the benefit of plaintiff and his wife, as statutory beneficiaries, to recover damages for

the alleged wrongful death of their fifteen-year-old daughter Susan. Death resulted from injuries sustained when the automobile in which she was riding as a guest passenger overturned. The automobile was owned by the defendant, Robert V. Dague, and driven at the time by his seventeen-year-old son, the defendant, Scott Dague. Trial of the case resulted in a verdict for plaintiff for twenty-five thousand ($25,000.00) dollars, actual damages; and the matter is here on appeal by the defendants from an order of the lower court refusing their motions for judgment notwithstanding the verdict and, in the alternative, for a new trial.

The appeal from the refusal to grant defendant's motion for judgment notwithstanding the verdict involves a determination of whether, viewed in the light most favorable to plaintiff, there was any evidence reasonably sustaining an inference of actionable recklessness or wilfulness on the part of the driver of the automobile in which the deceased was riding. For, since the deceased was a guest passenger in the automobile when she sustained the fatal injuries, recovery cannot be based upon simple negligence but only upon evidence sustaining an inference that the driver of the motor vehicle was guilty of either intentional or reckless misconduct. Section 46-801, 1962 Code of Laws.

The defendant, Scott Dague, and the deceased were schoolmates. They were on their way to school about 9:30 A. M., on January 18, 1966, travelling along Highway No. 278, on Hilton Head Island, when the fatal accident occurred. Scott was driving his father's car, with the deceased sitting beside him, and another schoolmate, Miss Andrea Gerth, riding on the rear seat. At the time of the accident the vehicle was proceeding around a long sweeping curve to the left when the right wheels ran off the pavement on to the right shoulder of the highway. After the automobile had proceeded a distance of 228 feet, with the right wheels off the pavement on the dirt shoulder, the driver turned the wheels abruptly to the left in order to return to the pavement. As the right

wheels returned to the pavement, the automobile turned over several times, inflicting the fatal injuries to the deceased. The automobile travelled a distance of 228 feet on the right shoulder of the highway and a distance of 189 feet after it returned to the paved portion, or a total of 417 feet from the point where the right wheels left the pavement to the point where the vehicle came to rest after the accident.

The automobile was in good mechanical condition, the pavement was dry and free of defects, the weather was clear, visibility was good, no other traffic was involved, and the driver of the automobile was familiar with the highway and the curve in the road. The posted speed limit in the area was 55 M. P. H. Although both the occupant of the back seat of the automobile and the driver testified, the cause of the automobile leaving the pavement is unexplained. The defendant driver testified that he was proceeding along the highway at a speed of about fitfy-two (52) miles per hour and "the next thing I knew my right wheel dropped * * * off the edge of the road." He further stated that he then reduced his speed and when "he turned the wheels back onto the highway * * * the car got out of my control and I just started rolling down the highway."

While there is no direct evidence of negligence, we think that when the facts and circumstances are reckoned with in the light of ordinary experience and common sense, they are sufficient to justify an inference that the accident was due to the driver's recklessness in approaching the curve at an excessive rate of speed under the circumstances and without having the automobile under proper control. The testimony eliminates every other cause for the vehicle leaving the highway. The distances travelled after the autmobile left the highway and the manner in which the accident occurred give rise to an inference of excessive speed. The right wheels of the car travelled on the dirt shoulder for a distance of 228 feet before the driver attempted to bring them back on the pavement. After travelling this

distance, during which time the driver said he was applying the brakes and reducing speed, the speed of the automobile was still such that control could not be maintained when an attempt was made to return to the pavement. In addition, there is nothing in the record to show that there was any obstacle which would have prevented the driver from continuing along the shoulder until the speed of the vehicle had been reduced so that a return to the pavement could have been negotiated with reasonable safety. The evidence presented a jury issue as to whether the fatal injury to plaintiff's intestate was due to the recklessness of the driver of the automobile in which she was riding; and the motion for judgment notwithstanding the verdict was properly denied. *Peak v. Fripp*, 195 S. C. 324, 11 S. E. (2d) 383; *Brown v. Hill*, 228 S. C. 34, 88 S. E. (2d) 838; *Gause v. Livingston*, S. C., 159 S. E. (2d) 604.

The remaining questions concern alleged errors in the trial, which defendants claim entitle them to a new trial. First, it is contended that the trial judge erred in instructing the jury "that an automoble driver is not excused from liability for injuries caused by him as a result of his inexperience." Defendants take the position that the jury should have been instructed, as requested by them, that the inexperience of a driver is a matter to be considered in determining whether he is guilty of recklessness under the Guest Statute. They cite the principle, apparently applied in some jurisdictions, that the extent of a motorist's duty to a guest is to exercise only such skill and judgment as he possesses. Anno: 43 A. L. R. (2d) 1155; 5 Blashfield-Cyclopedia of Automobile Law and Practice, (3rd) Ed., Section 213.46; 8 Am. Jur. (2d), Automobiles and Highway Traffic, Section 501; 60 C. J. S. Motor Vehicles § 402.

There was no error in the instructions in this regard. The fact that this action is brought under the Guest Statute, which limits liability to intentional or reckless conduct, does not change the standard of care for

determining the responsibility of the driver. The basic standard of care by which the conduct of the driver was to be judged was that of a reasonably prudent person in the same or similar circumstances. We have held that "the test by which a tort is to be characterized as reckless, willful or wanton is whether it has been committed in such a manner and under such circumstances that *a person of ordinary reason or prudence* would have been conscious of it as an invasion of plaintiff's rights." (Emphasis added). *Suber v. Smith,* 243 S. C. 458, 134 S. E. (2d) 404. This standard applies in this State regardless of the driver's experience in operating a motor vehicle, and whether the question is one of ordinary negligence, or recklessness under the Guest Statute.

There is no fact or circumstance in this case which would charge the deceased with knowledge of any inexperience of the driver, and the trial judge correctly instructed the jury that an automobile driver is not excused from liability for injuries caused by him as a result of his inexperience. 2 Blashfield-Cyclopedia of Automobile Law and Practice, 3rd Ed., Sections 103.1 and 103.2; 60 C. J. S. Motor Vehicles § 264.

It is also charged that prejudicial error was committed in permitting the jury to have with them during their deliberations a High School Yearbook which contained matters that had been ruled inadmissible by the trial judge. Four pictures of the deceased were admitted in evidence, without objection. One of the pictures was on a page in the High School Yearbook and showed the deceased in athletic dress with a group of other students. It appears that the Yearbook also contained a memorial page to the deceased. Upon objection, those portions which referred to the memorial were ruled inadmissible. Since the picture in the Yearbook, which had been admitted in evidence, could not be removed without permanent damage to the volume, the balance of the pages were turned back and bound with rubber bands so that only the page admitted in evidence was visible. In handing the

Yearbook to the jury, the trial judge called their attention to the fact that the page admitted in evidence had been isolated from the others by the use of rubber bands; that other portions of the book were not in evidence, and should not be inspected by them. Defendants contend that in handing the Yearbook to the jury with instructions that they could only see the one page which had been admitted in evidence caused the jury to speculate as to the remaining contents and to believe that the remaining pages contained something detrimental to the defendant. The possibility of the inspection by the jury of all of the Yearbook is suggested, but admittedly there is nothing to indicate that such was done.

The admission in evidence of the photograph in the Yearbook and the manner of its submission to the jury, so as to keep inadmissible portions of the volume from coming to their attention, are matters left largely to the discretion of the trial judge. There is no showing of an abuse of discretion in the manner in which the admission of the evidence in question was handled or that defendants were prejudiced in any way.

Although we find no prejudice in this case, the better procedure to follow, where a portion of an exhibit is admitted in evidence, is to so remove or isolate the excluded portion as to eliminate all question of whether it was inspected by the jury.

The next assignment of error is based upon the refusal of the trial judge to permit the consideration of the life expectancy of the beneficiaries in determining the damages sustained by them from the death of their daughter. The beneficiaries, for whose benefit this wrongful death action was brought, were the father and the mother, who were 62 and 61 years of age, respectively. Defendant offered in evidence the mortality tables to show the life expectancy of the beneficiaries and also requested an instruction that the jury could take into consideration the life expectancy of the beneficiaries in determining the dam-

ages sustained by them. The trial judge, while indicating a view that the rule was unsound, held that, under the decisions in this State, the life expectancy of the beneficiaries in a wrongful death action was irrelevant. He accordingly excluded the proffered evidence and denied the requested instruction.

In commenting upon the question of whether the life expectancy of the beneficiaries in a wrongful death action should be considered in determing the amount of the damages sustained by them, the court in *Trimmier v. Atlantic & C. A. L. Ry. Co.,* 81 S. C. 203, 62 S. E. 209, stated: "We fail to see wherein the probable duration of the father's life has any relevancy to the issues involved, as the amount recovered is the absolute property of the beneficiary, under the terms of the statute."

In 1910, two years after the *Trimmier* case, the question was again before the Court in *Turbyfill v. Atlanta & C. Air Line Ry. Co.,* 86 S. C. 379, 68 S. E. 687. There the Court affirmed the refusal to give the following instruction: "The action in this case is brought for the benefit of the parent, and in considering what amount of damages should be allowed— if the jury determine that any should be allowed at all—the jury should take into consideration the age of the parent, and as the parent could not receive any aid, or support or assistance or comfort beyond her life, the jury should not render a verdict for an amount which would extend beyond the life of such parent, that is to say, they should not allow damages for a length of time beyond which they think the parent might reasonably be expected to live." In sustaining the refusal to give the above instruction, the Court stated: "The ruling of the presiding judge is sustained by the case of *Trimmier v. Atlantic & C. A. L. Ry. Co.,* 81 S. C. 203, 62 S. E. 209. Upon request, the appellant's attorneys were granted permission to review that case, as to this question. The Court, however, adheres to the doctrine therein announced."

The foregoing cases have apparently not been overruled and the trial judge correctly followed them as stating the rule in this State.

Defendants state in their brief that the rule adopted in Trimmier and Turbyfill is not sound. They contend that the weight of authority and reason support the contrary view that, since the only damages recoverable in a wrongful death action, under our statute, are those sustained by the beneficiary for whose benefit the action is brought, the life expectancy of the beneficiary is properly to be taken into consideration in measuring the beneficiary's loss occasioned by the death. See 22 Am. Jur. (2d), Death, Section 162; 25A C. J. S. Death § 121. Anno: 14 A. L. R. (2d), Page 530, Section 23. Although defendants state in their brief that the rule adopted in Trimmier and Turbyfill is unsound, they have not sought permission to argue against these cases in accordance with the procedure set forth in Rule 8, Section 10, of the Rules of this Court. While there is some doubt as to the soundness of the rule adopted in Trimmier and Turbyfill, we think the plaintiff is entitled to the application of the principle of *stare decisis* to the present situation, in the absence of a request in the prescribed manner that these cases be overruled. Under the rule adopted in the foregoing decisions, the trial judge properly held that the life expectancy of the beneficiaries was irrelevant in determining the damages sustained.

Finally, defendants contend that error was committed by the trial judge in striking the defense of contributory recklessness based upon the alleged failure of the deceased, a guest passenger, to use a seat belt. The defendants pled in their answer that the deceased was guilty of contributory recklessness "in failing to use the seat belt with which such car was equipped." At the conclusion of the testimony this defense was stricken by the court and, we think, properly so.

The testimony shows that the deceased was not wearing a seat belt and was thrown from the automobile when it

turned over. She was found dead shortly thereafter lying on the highway a few feet from the vehicle.

We reject the view that the mere failure to use a seat belt constitutes negligence or a failure to minimize damages. This was the extent of the testimony in this case. There was a total absence of any fact or circumstance to indicate that the failure of the deceased to fasten her seat belt contributed in any way to the occurrence of the accident or that she would not have been injured in the same manner if the seat belt had been fastened.

Affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.