HOWARD G. BOWEN, SR., ADMINISTRATOR OF ESTATE OF HOWARD GIBSON BOWEN, JR., DECEASED v. CONSTRUCTORS EQUIPMENT RENTAL COMPANY, A NORTH CAROLINA CORPORATION, AND JAMES STEPHEN WILSON

No. 7218SC454

(Filed 20 September 1972)

1. Appeal and Error § 6— damages issue set aside — matter of law — right to appeal

Where the verdict as to damages was set aside as a matter of law, rather than in the court's discretion, plaintiff could appeal as an aggrieved party.

2. Death § 7— wrongful death — instructions — life expectancy of recipients of damages

Where, in an action brought under the wrongful death statute as rewritten in 1969, there is evidence tending to show that persons entitled to receive the damages have a shorter life expectancy than that of deceased, the court must instruct the jury to consider the life expectancy of such persons in determining the amount of damages, if any, recoverable for the death. G.S. 28-174(a)(4).

3. Electricity § 8; Negligence § 35— crane cable striking power line — electrocution — contributory negligence

In an action for the wrongful death of plaintiff's intestate who was electrocuted when the cable of a crane, which the intestate had the task of attaching to sections of concrete pipe, struck a power line, plaintiff's evidence did not establish that his intestate was contributorily negligent as a matter of law where it tended to show that the boom of the crane had been successfully operated underneath the wires for almost two hours, that the boom was extended to a point

Bowen v. Rental Co.

higher than the wires only brief moments before the fatal accident, and that plaintiff's intestate could not watch the boom every instant and still accomplish his task of hooking the end of the cable into the pipe, and where there was evidence which would support the inference that the movement of the boom by the crane operator, and not the movement of the cable by the intestate, caused the cable to strike the power line.

Judge VAUGHN concurring in part and dissenting in part.

APPEAL by plaintiff and defendants from *Exum, Judge,* 3 January 1972 Regular Civil Session of Superior Court held in GUILFORD County, High Point Division.

Civil action for the alleged wrongful death of plaintiff's intestate who was killed by electrocution while working on a construction site in High Point on 26 June 1969. Plaintiff offered evidence which tended to show the following:

At the time of his death, plaintiff's intestate was 17 years of age, unemancipated, and living with his father (the plaintiff), his mother and a sister. He planned to enter college as a freshman in the fall of 1969 and obtained employment for that summer with Samet Construction Company. Samet was erecting a building on Kettering Road. In connection with the project it was necessary to construct a storm sewer by installing sections of concrete pipe in a ditch running diagonally for approximately 100 feet between the building and the curb of the road. Each section of pipe was thirty inches in diameter, approximately four feet long, and weighed from 1400 to 1500 pounds. The pipe had been unloaded near the curb of the road. High tension power lines, approximately 32 feet in height, ran parallel to the road and near the curb.

The corporate defendant was engaged by Samet to furnish a crane and operator to place the pipe in the ditch. Plaintiff's intestate was assigned to assist. On 25 June 1969 defendants brought to the site a crane which had a stationary boom that could not maneuver safely underneath the power lines. For this reason this crane was not used, and it was replaced the following day with one which had a 20-foot boom that could be lowered and extended 60 feet in a telescopic manner. The president of Samet testified that the power company was not requested to cut off the power because this crane could be operated lower than the power lines.

A cable extended from the boom of the crane and a "finger-type" hook, weighing approximately 20 pounds, was at the end of the cable to hook into the pipe. The job of plaintiff's intestate was to insert the hook into the pipes. The individual defendant operated the crane. For a considerable period of time the boom was operated underneath the wires. Odell Couch testified that he watched the operation for almost two hours and during this time the boom was kept low. He stated that "the cable will pick up real close to the boom, and it was out to an angle enough to get under the wires and not do nothing." At no time during this period did the witness see the boom extend above the wires or get closer than three to four feet from them. The witness left the premises for about 10 minutes and returned to make a telephone call from an office on the job site. As he came out of the door of the office, the witness heard a buzzing noise and saw the crane up above the wire. The crane boom and cable were "right straight up over the wire." He ran to see what had happened and found Mr. Samet trying to revive the Bowen boy.

Samet testified: "I looked up and saw that the boom of the crane was up very high and that the boom was moving very close to the power lines, and almost at the same instant as he was swinging around there seemed to be only a slight hesitation as it got very near the power line and then it moved closer to the power line, and the next thing I knew there was an electrical buzzing and arcing noise. . . . I looked up and saw the wire in contact with the cable from the crane, in contact with the electrical wires—and I looked down and saw Gibby Bowen, known as Howard Gibson Bowen, Jr., standing very close to this fork or finger that was hanging from the cable. At that time, I couldn't tell for sure if he was touching this piece of metal or not because of the angle and distance. . . . [H]e started moving away from this piece of metal, the fork, and appeared to be running from it." Plaintiff's intestate fell after running a few steps and died immediately from electrical shock.

In his deposition, offered in evidence by plaintiff, defendant Wilson admitted that he was operating the boom higher than the power line at the time of the accident, but he did not say when he first extended it to such a height. He stated, "I swung my boom within some 12 to 18 inches of those high-

voltage wires, and a distance of some eight to 10 feet over and above the high-voltage wires." Wilson considered this necessary for the operation. He contended that the cable made contact with the wire when plaintiff's intestate pulled the cable toward a section of pipe.

Defendants did not offer evidence.

The jury answered issues of negligence and contributory negligence in plaintiff's favor and awarded substantial damages. A fourth issue relating to defendants' cross action against Samet is not involved on this appeal.

Judgment was entered upon the first two issues. The court allowed defendants' motion to set aside the issue of damages for errors of law. In setting aside this issue, the court stated:

" . . . [T]he Court should have instructed the Jury that on the value, the monetary value of the services, protection, care and assistance, society, companionship, comfort, guidance, and kindly offices and advice, the Jury should have taken into account the life expectancy of the parents of the decedent, they being those persons who are entitled to these things under the evidence, the Court being of the opinion that the age of the parents having been offered and the Court should have instructed the Jury on what the Mortuary Tables showed as to their life expectancy so as to give the Jury the opportunity to consider the fact that their life expectancy may have been shorter than the life expectancy of the deceased, and on that ground and on that ground only the Court is going to allow the defendants' motion to set aside the verdict on the Third Issue only.

\* \* \*

. . . [T]he motion is denied on any other ground, which is to say the Court does not feel the verdict is excessive and does not allow the motion on that ground, but only on the law in the case."

*Morgan, Byerly, Post & Herring by W. B. Byerly, Jr., for plaintiff appellant-appellee.*

*Smith, Moore, Smith, Schell & Hunter by Bynum M. Hunter and David M. Moore II for defendant appellants-appellees.*

GRAHAM, Judge.

### PLAINTIFF'S APPEAL

[1]  Plaintiff appeals from the court's order setting aside the issue of damages. Since this portion of the verdict was set aside as a matter of law, rather than in the court's discretion, plaintiff may appeal as an aggrieved party. *McNeill v. McDougald,* 242 N.C. 255, 87 S.E. 2d 502; *Akin v. Bank,* 227 N.C. 453, 42 S.E. 2d 518.

[2]  This appeal raises the question: Where, in an action brought under our wrongful death statute as rewritten in 1969, there is evidence tending to show that persons entitled to receive the damages recovered have a shorter life expectancy than that of deceased, is it error for the court to fail to instruct the jury to consider the life expectancy of such persons in determining the amount of damages, if any, recoverable pursuant to G.S. 28-174(a) (4)? We answer in the affirmative and affirm the order setting aside the issue of damages for the reason that the jury was not so instructed.

G.S. 28-173 confers upon the personal representative of a decedent the right of action to recover for the decedent's wrongful death. G.S. 28-174 sets forth the basis on which the amount of damages is to be determined. Prior to 14 April 1969, G.S. 28-174 provided: "The plaintiff in such action may recover such damages as are a fair and just compensation for the pecuniary injury resulting from such death." Under this provision damages were "determinable on the basis of the pecuniary injury suffered by the decedent's estate as a result of his death," *Smith v. Mercer,* 276 N.C. 329, 334, 172 S.E. 2d 489, 492, and the measure of damages was the present value of the net pecuniary worth of the deceased based upon his life expectancy. *Smith v. Mercer, supra; Bryant v. Woodlief,* 252 N.C. 488, 114 S.E. 2d 241; 81 A.L.R. 2d 939.

In 1969 the provisions of G.S. 28-174 were rewritten. The new statute, effective 14 April 1969, provides in pertinent part:

"Sec. 28-174. *Damages recoverable for death by wrongful act; evidence of damages.* (a) Damages recoverable for death by wrongful act include:

(1) Expenses for care, treatment and hospitalization incident to the injury resulting in death;

(2) Compensation for pain and suffering of the decedent;

(3) The reasonable funeral expenses of the decedent;

(4) The present monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected:

a. Net income of the decedent,

b. Services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered,

c. Society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered;

(5) Such punitive damages as the decedent could have recovered had he survived, and punitive damages for wrongfully causing the death of the decedent through maliciousness, wilful or wanton injury, or gross negligence;

(6) Nominal damages when the jury so finds.

(b) All evidence which reasonably tends to establish any of the elements of damages included in subsection (a), or otherwise reasonably tends to establish the present monetary value of the decedent to the persons entitled to receive the damages recovered, is admissible in an action for damages for death by wrongful act."

In commenting on the new statute Chief Justice Bobbitt stated in *Smith v. Mercer, supra* at 333, 172 S.E. 2d at 492:

"The 1969 Act provides for the recovery in the personal representative's action of (1) expenses for care, treatment and hospitalization incident to the injury resulting in death; (2) compensation for pain and suffering of the decedent; (3) the reasonable funeral expenses of the decedent; (4) punitive damages; and (5) nominal damages. Prior to the 1969 Act, the administrator had no right of action to recover such damages. Moreover, the

1969 Act provides for the recovery of '(t)he present monetary value of the decedent *to the persons entitled to receive the damages recovered,*' including but not limited to compensation for enumerated items. (Our italics.) We do not undertake now to define the legal significance of this provision. Suffice to say, damages determinable in accordance with this provision of the 1969 Act are quite different from damages determinable on the basis of the pecuniary injury suffered *by the decedent's estate* as the result of his death."

In discussing the 1969 changes in the law relating to damages recoverable in a wrongful death action, Professor Byrd states:

"The basic measure of recovery, as well as some of the specific items included under it in the statute, seems to shift the focus for the determination of wrongful death damages from ascertaining the loss of net income to the decedent's estate to ascertaining all monetary losses to the beneficiaries. A reasonable interpretation of the statute might well hold that not only the present worth of the decedent's net income (the measure of recovery under the prior statute) but also the beneficiaries' life expectancies and expectations of gain from the decedent must be considered in determining the losses based upon termination of the decedent's earnings." Byrd, Recent Developments in N.C. Tort Law, 48 N.C.L. Rev. 791, 804-805.

It is consistently held in jurisdictions where the measure of damages in death cases is "loss to beneficiaries," rather than the "loss to estate," that a beneficiary's right to recover the value of expected benefits is limited to his life expectancy. See for instance: *Rikimatsu Kawamura v. Honek,* 127 Cal. App. 509, 16 P. 2d 150; *Parsons v. Easton,* 184 Cal. 764, 195 P. 419; *Siebeking v. Ford,* 128 Ind. App. 475, 148 N.E. 2d 194; *Baltimore Transit Co. v. State,* 194 Md. 421, 71 A. 2d 442; *Mississippi Oil Co. v. Smith,* 95 Miss. 528, 48 So. 735; *Fisher v. Trester,* 119 Neb. 529, 229 N.W. 901; *Whitaker v. Blidberg Rothchild Co.,* 296 F. 2d 554 (4th Cir. 1961); 25A C.J.S., Death, § 121, p. 1013; 22 Am. Jur. 2d, Death, § 162, p. 723; Annot., Death of Infant—Measure of Damages, 14 A.L.R. 2d 485, § 23; S. Speiser, Recovery for Wrongful Death, § 3:5, p. 78. *Cf. Jones v. Dague,* 252 S.C. 261, 166 S.E. 2d 99.

We think it clear that damages recoverable under G.S. 28-174(a)(4) are not determined by ascertaining the net pecuniary loss suffered by the estate, as was the case under former G.S. 28-174. They are determined by ascertaining the present monetary loss suffered by those persons entitled to receive the damages. (Beneficiaries under the Intestate Succession Act.) Here, the parents of the deceased are "the persons entitled to receive the damages." Since they obviously could not receive any benefit after their own death, their life expectancy is material in determining "the present monetary value of the decedent" to them. The jury should have been instructed that in making this determination, it is the shorter expectancy of life that is to be taken into consideration and that if the life expectancies of the parents were determined to be shorter than that of the son, the benefits to be considered would be those only which might reasonably be expected to accrue during the life of the parents.

## DEFENDANTS' APPEAL

[3] Defendants' first contention is addressed to the denial of their motions for directed verdict and judgment N.O.V. They raise only the question of whether plaintiff's evidence establishes the contributory negligence of his intestate as a matter of law. It is elementary that unless the evidence so clearly establishes the contributory negligence of plaintiff's intestate that no other conclusion can reasonably be reached, this question must be resolved against defendants. Further, any discrepancies and contradictions in the evidence are to be resolved by the jury, and not by the court. *Naylor v. Naylor,* 11 N.C. App. 384, 181 S.E. 2d 222, and cases cited.

The law imposed upon plaintiff's intestate the duty to use ordinary care to protect himself from injury; the degree of care required being commensurate with the danger to be avoided. *Rosser v. Smith,* 260 N.C. 647, 133 S.E. 2d 499; *Alford v. Washington,* 244 N.C. 132, 92 S.E. 2d 788; *Rice v. Lumberton,* 235 N.C. 227, 69 S.E. 2d 543; *Mintz v. Murphy,* 235 N.C. 304, 69 S.E. 2d 849. Whether plaintiff's intestate exercised the required degree of care under the circumstances presented here is, in our opinion, a question that was properly left to the jury.

The evidence, when considered in the light most favorable to plaintiff, strongly suggests that it was only brief moments before the fatal movement of the cable that the boom of the crane was extended to a point higher than the power lines. For almost two hours previously the boom had been successfully operated underneath the wires where there was no danger that it could move the cable, or permit it to be moved, into contact with the lines. Indeed, this particular crane had been substituted for the one first brought to the site so that it could be operated in this manner. The evidence certainly does not compel the conclusion that plaintiff's intestate knew, or in the exercise of reasonable care should have known, that the operator of the crane would suddenly and without notice extend the height of the boom above the wires so as to increase substantially the danger involved. Absent notice to the contrary, a person may assume, and act upon the assumption, that every other person will perform his duty and obey the law and that he will not be exposed to danger which can come to him from the violation of duty by such other person. *Weavil v. Myers,* 243 N.C. 386, 90 S.E. 2d 733.

Moreover, it is manifest from the evidence that plaintiff's intestate could not watch the boom every instant and still accomplish his task of hooking the end of the cable into the pipe. The individual defendant testified that attention and care were required in inserting the 20-pound finger into a pipe; otherwise, the pipe could sustain damage by chipping or something of that nature. "One engaged in work which can be done safely, and whose assignment prevents him from maintaining a lookout, may not be held contributorily negligent, as a matter of law, when he proceeds with his duties on the assumption that another worker will perform his own assignment in a reasonably careful manner and thus not increase the danger." *Lewis v. Barnhill,* 267 N.C. 457, 464, 148 S.E. 2d 536, 542.

*Lewis v. Barnhill, supra,* presented facts strikingly similar to those involved in this case. The plaintiff sustained an electric shock when a steel joist being hoisted by a crane came in contact with an electric wire. Plaintiff's job was to place one end of the joist on a center beam. In holding that the evidence did not establish plaintiff's contributory negligence as a matter of law, the Supreme Court emphasized that plaintiff's assignment required that his attention be concentrated upon

---
**Bowen v. Rental Co.**

---

his end of the joist; and further, that with reasonable care the defendant crane operator could have brought the joist to plaintiff at a lower level "and thus have avoided any contact with the power line." Similar conclusions can reasonably be drawn from the evidence in this case.

Defendants strenuously argue that their motions should have been allowed because plaintiff offered in evidence the deposition of the individual defendant and that testimony in the deposition tended to show that plaintiff's intestate pulled the cable into the power line after the boom had stopped so as to leave the cable still 12 to 18 inches away from the line.

Where a person sees an electric wire and knows it is or may be highly dangerous, it is his duty to avoid contact with it. *Alford v. Washington, supra.* Defendants cite several cases which hold that a person working with or in close proximity to electric wires, which he knows to be dangerous, is negligent as a matter of law if his conduct results in contact being made with the wires. A similar result might be appropriate in this case if plaintiff's evidence permitted no inference contrary to the one which arises from the individual defendant's testimony, and if the evidence also conclusively established that plaintiff's intestate should have known that the crane's boom had been extended to a point where contact was possible. However, the evidence here permits other inferences. Couch was explicit in stating that when he heard the buzzing noise the boom, as well as the cable, was "right straight up over the wire." Samet testified that he saw the boom moving very close to the power lines, that there seemed to be only a slight hesitation as it got very near the power line and "then it [the boom] moved closer to the power line, the next thing I knew there was an electrical buzzing and arcing noise. . . . "

A clear inference arises from this evidence that it was the movement of the boom by Wilson, and not the movement of the cable by plaintiff's intestate, that caused the cable to make contact with the power pines. Contradictions, conflicts and inconsistencies in the evidence, and opposing inferences arising therefrom, must be resolved in plaintiff's favor. *Bowen v. Gardner,* 275 N.C. 363, 168 S.E. 2d 47.

Defendants bring forward an assignment of error to the court's charge to the jury on the issue of negligence. This

assignment of error has been reviewed and is overruled. Other assignments of error relating to the issue of damages are not discussed since that issue was set aside and must be retried.

Plaintiff's appeal—affirmed.

Defendants' appeal—no error.

Judge MORRIS concurs.

Judge VAUGHN concurs in part and dissents in part.

Judge VAUGHN:

I concur in the opinion of the majority which concludes that there were errors in the charge of the court. I dissent from the opinion of the majority which finds no error on defendants' appeal. In my opinion, a review of the entire record discloses that plaintiff's intestate was negligent as a matter of law and that such negligence was a proximate cause of his death.