Bertrum G. PRITTS, Executor of the Estate of Annabelle Sunderland Pritts, Plaintiff,

v.

WALTER LOWERY TRUCKING COMPANY, Defendant,

v.

Dennis L. MERREY, Third-Party Defendant.

Civ. A. No. 74–1241.

United States District Court, W. D. Pennsylvania.

Sept. 3, 1975.

Belin, Belin & Naddeo, Clearfield, Pa., for plaintiff.

Dickie, McCamey & Chilcote, Pittsburgh, Pa., for defendant.

Wayman, Irvin, Trushel & McAuley, Pittsburgh, Pa., for third-party defendant.

### OPINION AND ORDER

SNYDER, District Judge.

The Court in this diversity action has before it a Motion for Partial Summary Judgment filed by the Plaintiff to eliminate the defense of contributory negligence and assumption of risk by reason of the failure to wear a seat belt.

An accident occurred at the intersection of Interstate 80 and Pennsylvania Route 897 in Lawrence Township, Clearfield County, Pennsylvania, and the Decedent, a passenger in an automobile driven by Dennis L. Merrey, was thrown from the car and killed in a collision with a tractor-trailer owned by the Defendant and operated by one of its employees, Edward Gunder.[1] Plaintiff-Executor instituted Wrongful Death and Survival Actions against the Defendant trucking company, alleging negligence in the failure to stop at a controlled intersection and in operating at an excessive rate of speed. Defendant interposed a general denial of acts of negli-

gence on its part and the defenses of contributory negligence and assumption of risk.[2]

The Plaintiff by way of Interrogatory asked the Defendant:

"10[&11]. State specifically and with particularity, the alleged acts of contributory negligence [and assumption of risk] that this plaintiff's decedent committed?"

In each instance, the answer given was "Failure to wear seat belts." Plaintiff then filed the instant Motion.

Our research fails to disclose that the "seat belt defense" has been ruled upon in any reported Pennsylvania appellate decisions. This Court must, therefore, predict how the Pennsylvania courts would rule:

"When a purchaser claims damages from a seller because of a defective product, there is often a need to evaluate the proper roles of Section 402A of the Restatement of Torts 2d and the Uniform Commercial Code. This appeal presents such an occasion. Specifically, we are confronted with the question of whether a seller may disclaim responsibility for any potential liability under § 402A, and, if so, what conditions must be met.

This is a diversity case, and we must be guided by the Erie light of Pennsylvania law, an uncertain illumination at best since the appellate courts of that state have not yet addressed themselves to the issue. We are mindful that our assigned role is to predict and not to form state law and so will utilize those guide posts which are available." *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.*, 499 F.2d 146 (3d Cir. 1974) at p. 147.

Four approaches have been taken in such circumstances:[3]

(1) failure to wear a seat belt neither constitutes negligence nor can it be used

---

1. It is conceded Gunder was acting within the scope of his employment.

2. It also joined as a third party defendant, Dennis L. Merrey, the operator of the automobile.

3. The law is by no means well settled. Cases on all sides of the controversy are collected at 15 A.L.R.3d 1428.

to mitigate damages under either an "avoidable consequences" theory, *See Prosser on Torts* 433 (3d ed. 1964), or an "apportionment of damages" theory, *See Restatement* (2d) *Torts* § 465, comment c (1965);

(2) failure to make use of an available seat belt constitutes negligence *per se* barring recovery;

(3) in not making use of an available seat belt, the plaintiff's decedent may not have conformed to the general standard of conduct which would be followed by a reasonable man of ordinary prudence under similar circumstances;

(4) plaintiff should not be allowed to recover damages for those injuries which seat belts would have prevented and should have damages diminished for those injuries which seat belts would have made less severe.

Kircher, "The Seat Belt Defense—State of the Law," 53 *Marq.L.Rev.* 172, 173 (1970). For the reasons hereinafter set forth, we adopt the fourth approach.

█ Taking first the alternative of *per se* negligence, the Court must conclude that in the absence of a Pennsylvania Statute making the use of seat belts a mandatory safety standard in automobiles, negligence as a matter of law cannot arise from their nonuse. Under Title 75, Pa.Stat. § 843, those who sell or offer to sell safety belts or harnesses must have the devices approved by the Secretary of the Commonwealth. A Bill requiring the installation of belts was introduced in the Pennsylvania Assembly on May 2, 1967, House Bill No. 1020, 1967 Sess., but was withdrawn, apparently because Congress enacted The National Traffic and Motor Vehicle Safety Act of 1966. That Act led to the Commerce Department's requiring such installation in all new cars sold after March 1, 1967. We cannot, however, find any legislation requiring the mandatory *use* of such belts as a safety standard. *Cf.* Cal.Veh.Code § 27304 (1972) (use required in training vehicle); R.I.Gen.Laws Ann. § 31–23–41

(1962) (in school buses, etc.). Absent this legislative pronouncement we are persuaded, as other courts considering this question have been, that in Pennsylvania the failure to wear a seat belt does not constitute negligence *per se*. *See Remington v. Arndt*, 28 Conn.Super. 289, 259 A.2d 145 (1969); *Kavanagh v. Butorac*, 140 Ind.App. 139, 221 N.E.2d 824 (1966); *Cierpisz v. Singleton*, 247 Md. 215, 230 A.2d 629 (1967); *Romankewiz v. Black*, 16 Mich.App. 119, 167 N.W.2d 606 (1969); *Miller v. Miller*, 273 N.C. 228, 160 S.E.2d 65 (1968); *Bertsch v. Spears*, 20 Ohio App.2d 137, 252 N.E.2d 194 (1969); *Robinson v. Lewis*, 254 Or. 52, 457 P.2d 483 (1969); *Jones v. Dague*, 252 S.C. 261, 166 S.E.2d 99 (1969); *Tom Brown Drilling Co. v. Nieman*, 418 S.W.2d 337 (Tex.Civ.App. 1967); *Bentzler v. Braun*, 34 Wis.2d 362, 149 N.W.2d 626 (1967). As one commentator noted:

"The theory that a court will adopt a rule that the non-use of available belts is negligence as a matter of law appears to lead to the same dead-end as does the use of a similar argument based upon an installation statute. The rejection of this argument seems reasonable. A hard and fast rule on the effect of the use or non-use of seat belts would be ill-advised due to the many circumstances which arise in auto travel. . . . " (footnote omitted) Kircher, *supra* at p. 175.

█ We must next consider whether there exists a common law duty to wear a seat belt. In Pennsylvania contributory negligence is a total bar to recovery. As stated in the recent case of *McCay v. Philadelphia Electric Company*, 447 Pa. 490, 291 A.2d 759 (1972) (at p. 762):

"The correct statement of the law is that a plaintiff cannot recover if his own negligence, however slight, contributes to the happening of the accident in a proximate way."

*See also, Lockett v. General Electric Co.*, 376 F.Supp. 1201 (E.D.Pa.1974), *aff'd.* 511 F.2d 1394 (3d Cir. 1975).

Courts in other states of similar law have been hesitant to impose a common law duty to wear seat belts. *E. g., Lipscomb v. Diamiani*, 226 A.2d 914 (Super.Ct.Del.1967). In *Cierpisz v. Singleton, supra,* the Court stated (230 A.2d at p. 635):

> "We do not adopt, at this time, the Wisconsin court's statement that 'an occupant of an automobile either knows or should know of the additional safety factor produced by the use of seat belts.' We are persuaded, for the present at least, that the following statement in Roethe, Seat Belt Negligence in Automobile Accidents, supra,[4] is a more accurate appraisal of the status of seat belts in the 'mind of the public:

>> ' * * * The social utility of seat belts and their use could easily be demonstrated by statistical data and reliance on the factual assumptions supported by this data as brought out earlier in this note. *Nonetheless, the issue of the social utility of the use of seat belts is definitely not clarified in the mind of the public and the courts. Doubts remain as to whether seat belts cause injury, and the real usefulness of the seat belt in preventing injuries has not become public knowledge.*' Id. at 296. (Emphasis supplied.)

> And again at 297:

' * * * However, the social utility of using a seat belt is not clear. In spite of the overwhelming scientific evidence supporting the beneficial results of seat belt use, acceptance of the safety belt by the public has not been achieved. *The social utility of wearing a seat belt must be established in the mind of the public before failure to use a seat belt can be held to be negligence. Otherwise the court would be imposing a standard of conduct rather than applying a standard accepted by society.*' (Emphasis supplied.)"

*See also, Petersen v. Klos*, 426 F.2d 199 (5th Cir. 1970).[5]

The Courts of Pennsylvania have consistently held that the test of contributory negligence is "found in the affirmative question, does the negligence contribute in any degree to the production of the injury complained of?" *Creed v. Pennsylvania R. R.*, 86 Pa. 139 (1878). However, this Court believes that the injury mentioned above would more accurately be interpreted to mean, the *accident which produces* the injury. Thus, unless both plaintiff's and defendant's negligence concur in *causing the accident,* no question of contributory negligence is presented. *Clee v. Brinks, Inc.*, 135 Pa.Super. 345, 5 A. 2d 387 (1939). This is the clear import of *McClung v. Pennsylvania Taximeter*

---

4. 1967 *Wis.L.Rev.* 288 (1967).

5. Kircher's reaction to such an argument is as follows: "The court's acceptance of such a statement at face value is almost as incomprehensible as the reason which led the student author to make it. One would have to be deaf and blind to be unaware that the public has been exposed to one of the greatest safety education campaigns on record regarding the effectiveness of seat belts. Radio, television, the printed media and bill boards all carry some form of the 'Buckle Up For Safety' message with regularity.

Evidence that the public does appreciate the effectiveness of safety belts as a safety device comes from a survey of drivers and occupants in over 1,700,000 cars which was conducted by the Auto Industries Highway Safety Committee. In the cars which had belts installed, only 10.3 percent of the persons questioned said that they never used belts under any circumstances. While some might question the honesty of respondents, their answers surely would have been different if they were not convinced that belts had any utility. In view of this it is strange that the court would accept a statement, particularly an unsupported one, that the real usefulness of seat belts has not become public knowledge." Kircher, *supra*, at p. 181. *See also*, Snyder, "The Seat Belt as a Cause of Injury," 53 *Marq.L.Rev.* 211 (1970). Thus, to find no common law duty to "buckle up" based on the uncertainty of attitudes would be for this Court to ignore the realities of seat belt use. This does not mean, however, that there exists a common law duty to wear seat belts, the breach of which will bar a plaintiff from recovery.

*Cab Co.*, 252 Pa. 478, 97 A. 694 (1916), wherein the Supreme Court stated (252 Pa. at pp. 480–481, 97 A. at p. 694):

"His being there [seated on the floor of the cab with his feet on the running board] was merely a condition, *not the cause of the accident.* A person injured by the negligence of another is not deprived of all remedy merely because at the time he was occupying an unusual position in a conveyance, unless he thereby co-operated in *causing* his injury." (Emphasis supplied.)

*See also, Hull v. Bowers*, 273 Pa. 429, 117 A. 189 (1922).

The conclusions to be drawn from the above are well stated in a student Note, "The Seat Belt Defense—The Sophist's Escape," 41 *Temp.L.Q.* 126 (1967), at p. 132:

"It has been suggested . . . that a person who rides in an automobile without using an available seat belt does not meet the standard of care of a reasonable man and that such an omission is negligent. However, plaintiff's omission, in order to constitute contributory negligence and therefore bar recovery, must concur with defendant's negligence in *causing the accident.* Beltless plaintiffs do not cause accidents. They do, however, aggravate their own injuries. . . ."[6]

We therefore hold, in light of the case law of Pennsylvania and after examining the many decisions in other jurisdictions on this issue, that the Courts of Pennsylvania would not, and we therefore will not, impose upon the motoring public a common law duty to wear seat belts.

■■ We can, however, and do find that competent evidence which tends to show that injuries were aggravated by such failure is admissible and can be considered by the jury in determining damages. *See Gould v. McKenna*, 86 Pa. 297 (1878). The Restatement comment on apportionment of damages, § 465,

---

**6.** *Compare Bentzler v. Braun, supra*, where the Court held (149 N.W.2d at pp. 639–640):

"While we agree with those courts that have concluded that it is not negligence *per se* to fail to use seat belts where the only statutory standard is one that requires the installation of the seat belts in the vehicle, we nevertheless conclude that there is a duty, based on the common law standard of ordinary care, to use available seat belts independent of any statutory mandate.

＊ ＊ ＊ ＊ ＊

While it is apparent that these statistics cannot be used to predict the extent or gravity of injuries resulting from particular automobile accidents involving persons using seat belts as compared to those who are not using them, it is obvious that, on the average, persons using seat belts are less likely to sustain injury and, if injured, the injuries are likely to be less serious. On the basis of this experience, and as a matter of common knowledge, an occupant of an automobile either knows or should know of the additional safety factor produced by the use of seat belts. A person riding in a vehicle driven by another is under the duty of exercising such care as an ordinarily prudent person would exercise under similar circumstances to avoid injury to himself.

＊ ＊ ＊ ＊ ＊

The question, therefore, is not whether the guest's negligence contributed to the cause of the accident but, rather, whether it contributed to the injuries. In view of the Wisconsin statutes that the legislative mandate in regard to seat belts applies merely to installation and not to use, the failure to use available seat belts is a question for determination by the jury as in the case of any ordinary negligence, i. e., was the conduct a substantial factor in producing a result.

We therefore conclude that, in those cases where seat belts are available and there is evidence before the jury indicating causal relationship between the injuries sustained and the failure to use seat belts, it is proper and necessary to instruct the jury in that regard. A jury in such case could conclude that an occupant of an automobile is negligent in failing to use seat belts. In the instant case, however, because of the lack of any evidence of causation, the trial judge properly refused the requested instruction. There was proof that seat belts were available and were not used, but that fact alone does not prove causation, for the driver of the vehicle also failed to use the available seat belts, but his injuries were minimal."

comment c, indicates that such evidence must be more than mere guesswork or speculation:

"There must of course be satisfactory evidence to support such a finding, and the Court may properly refuse to permit the apportionment on the basis of mere speculation." [7]

In the recent case of *Spier v. Barker*, 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164 (1974), plaintiff was thrown from her automobile after a collision, and admitted that her seat belt had not been fastened. The evidence was that she was thrown from her vehicle after the collision, and the vehicle rolled over and came to rest with her legs pinned under the left rear wheel. A professor of mechanical and aerospace engineering with extensive experience in the use of seat belts in both the aircraft and automotive industries was permitted to testify, over objection, that in his opinion, "the seat belt is an extremely effective device in either preventing or alleviating injury." After examination of photographs of the accident scene and the vehicle, this witness expressed his opinion that the plaintiff would not have been thrown from the vehicle and her injuries would have been slight, had she been using her seat belt. The Trial Judge instructed the jurors (363 N.Y.S. 2d at p. 919, 323 N.E.2d at p. 166):

"If you find that a reasonably prudent driver would have used a seat belt, and that she would not have received some or all of her injuries had she used the seat belt, then you may not award any damages for those injuries you find she would not have received had she used the seat belt. The burden of proving that some or all of her

injuries would not have been received had she used the seat belt rests upon the [defendants]".

At the request of counsel for the plaintiff, the Trial Judge also stated to the jury: (*Id.*)

"[T]here isn't any law in the State of New York that requires a person to wear a seat belt or to anticipate the happening of an accident."

After deliberating briefly, the jury returned verdicts in favor of the defendants and against the plaintiff, and also against plaintiff's husband on his derivative action for loss of consortium. A verdict of "no cause of action" was returned against the defendants on their counterclaim for property damage to the tractor-trailer.

The Court of Appeals affirmed the lower court, and stated (*Id.* at p. 920, 323 N.E.2d at p. 166):

" . . . We today hold that nonuse of an available seat belt, and expert testimony in regard thereto, is a factor which the jury may consider, in light of all the other facts received in evidence, in arriving at its determination as to whether the plaintiff has exercised due care, not only to avoid injury to himself, but to mitigate any injury he would likely sustain."

The Court, however, did indicate that the non use of seat belts should be strictly limited to the jury's determination of damages, and not be considered by the triers of fact in solving the issue of liability. It held, moreover, that the burden of proving non use rested upon the defendant, *i. e.*, "the issue should not be submitted to the jury unless the defendant can demonstrate, by competent

---

7. The unsettled status of the question, *viz.*, whether competent evidence of causal connection between failure to wear seat belts and particular injuries or severity of injuries should be considered in mitigation, is best evidenced by two District Court decisions. One, *Woods v. Smith*, 296 F.Supp. 1128 (N. D.Fla.1969), held (at p. 1129):

"I conclude Oklahoma would not allow such failure [non use of seat belts] to be

presented either as evidence of contributory negligence, or in mitigation of damages."

Yet in the second, *Henderson v. United States* (unreported), *aff'd*, 429 F.2d 588 (10th Cir. 1970), the District Court for the Western District of Oklahoma, again interpreting Oklahoma law, concluded that the non use of seat belts could be considered in mitigation of damages. 429 F.2d at p. 591.

evidence, a causal connection between the plaintiff's nonuse of an available seat belt and the injuries and damages sustained".

The Court then specifically refused to consider the non use of seat belts as contributory negligence, for in such circumstances it "would impose liability on a plaintiff for all his injuries though use of a seat belt might have prevented none or only a portion of them." It is noted that the Appellate Court refused the argument that seat belts might cause or increase injuries, and that a jury would be incapable of segregating injuries caused by the initial impact from those attributable to the plaintiff's failure to fasten his (her) seat belt.[8]

In *Barry v. Coca Cola Co.*, 99 N.J.Super. 270, 239 A.2d 273 (1967), the Court had no expert evidence before it, but noted (239 A.2d at p. 276):

"That puts before this court the question as to whether or not there is, in this case, 'satisfactory evidence' to support a finding that the failure to use seat belts was a 'substantial contributing factor increasing the harm' which plaintiff suffered. There is no such evidence here. I am not now deciding how I would rule if there were here expert evidence to the effect that, if seat belts had been used by plaintiff, he would not have suffered

the injuries which have been revealed in this testimony. Parenthetically, the court can see many difficulties in producing effective expert testimony to establish that fact. It would have to be based upon a hypothetical question of detailed specificity, strictly tailored to the facts proved with respect to the kind of seat belt used, its adjustment, the distance of the passenger from, let us say the windshield, and many other imponderables I would not attempt to fully envision here." (Footnote omitted.)

And in *Kavanagh v. Butorac, supra,* the Court stated (221 N.E.2d at p. 830):

"We recognize possibility of the doctrine [of avoidable consequences] applying . . . in some matter where the circumstances are clearer . . . in showing that some part of the injury would not have occurred except for the fact that plaintiff failed to avoid the consequence of the tort by not fastening his seat belt."

We believe that the Courts of Pennsylvania would allow competent evidence of avoidable consequences, and we shall therefore permit such evidence to be submitted to the jury for consideration in its determination in awarding damages, if the Defendant meets its burden of demonstrating by competent proof, avoiding speculation, the extent of inju-

8. *Compare Smith v. Hyerly Motors, Inc.*, 525 P.2d 1013 (Or.1974), where plaintiff purchased a used Volkswagen from defendant which was not equipped with safety belts. As part of the contract of sale, defendant agreed to install seat belts. When plaintiff accepted delivery, however, the safety belts had not been yet installed in the automobile. On at least one occasion thereafter, plaintiff brought the Volkswagen to the defendant and requested that he perform his contractual duty to install the safety belts. Defendant refused, but assured plaintiff that they would be installed when facilities became available in defendant's service department. Forty days later, plaintiff sustained severe personal injuries. Plaintiff then sued, alleging failure to fulfill contractual obligation by the defendant was the proximate cause of her injuries. A demurrer was sustained, which was affirmed on appeal. Oregon had a statute requiring safety belts or harnesses on all new automobiles and plaintiff argued that this established a standard that any automobile not equipped with safety belts was inherently dangerous. Plaintiff also argued that since defendant agreed to do by contract what the statute required as to new automobiles, the breach of contract should be equated with a violation of the statute and, therefore, should be negligence *per se*. The Supreme Court expresses doubts as to the logical validity of applying negligence *per se* rules, even in situations in which a violation of a safety statute is established. While the Court conceded plaintiff might have a cause of action for breach of contract, it asserted that such breach could not be considered negligence in a personal injury case.

ry caused solely by the failure to wear a seat belt.[9]

In accordance with the foregoing, an appropriate Order granting partial summary judgment will be entered.

---

9. The defense of assumption of the risk is not separately discussed, as all considerations applying to contributory negligence apply with even greater weight to assumption of the risk which requires a showing of deliberate participation in a known peril.