99 N.J. Super. 270 (1967)
239 A.2d 273
BERNARD J. BARRY, PLAINTIFF,
v.
THE COCA COLA CO. AND THOMAS COGHAN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 10, 1967.
*271 Mr. Prospero De Bona for plaintiff (Messrs. Milton, Keane & De Bona, attorneys).
Mr. John J. Gaffey for defendant (Messrs. Gaffey, Webb & McDermott, attorneys).
LYNCH, J.S.C.
At the close of the evidence plaintiff moves to strike the defense of contributory negligence and *272 for judgment in his favor on the issue of liability. Plaintiff was a passenger in a car operated by defendant Coghan. Seat belts were available, but plaintiff did not use them. Coghan drove into the rear of a police car which was at a standstill at a red traffic light. Plaintiff struck the windshield, suffering severe facial scars. Defendant Coghan[1] opposes plaintiff's motion, on the ground that his failure to use available seat belts suffices to warrant submission of the issue of contributory negligence to the jury.[2]
There are no reported New Jersey decisions bearing on the question as to whether failure to use available seat belts may constitute contributory negligence and, if so, the legal consequences thereof.
The problem really involves two separate and distinct questions. The first question is, assuming that the failure to use seat belts was contributory negligence, is it of such a nature as to bar recovery against defendant on the issue of liability? The second question is, if such contributory negligence is not sufficient to bar recovery, then may it be considered by the jury in diminution of plaintiff's damages? As to the latter question, are the proofs in this case such that the jury should be permitted to apportion plaintiff's damages so as to subtract from his total damages such amount thereof as may have been due to the failure to use seat belts?
As to question number one, i.e., whether the failure to use seat belts shall be a bar to recovery, the court is convinced that, assuming defendant was negligent and that plaintiff suffered some degree of injuries as a proximate result thereof, the defense of contributory negligence cannot bar recovery. The fact that plaintiff failed to use the seat belts had nothing to do with the happening of the accident, or that he suffered some degree of injuries, prescinding, for the moment, from their extent. The failure to use seat belts *273 was not a proximate cause or a substantial factor in producing an accident from which "some" injuries flowed or occurred.
Therefore, the court holds that the failure to use seat belts does not constitute a defense sufficient to bar recovery to plaintiff or absolve defendant from liability.
The relevant principle applied herein, i.e., the necessity of distinguishing between negligence contributing to the accident, and negligence contributing to the injuries sustained, is effectively rationalized in Mahoney v. Beatman, 110 Conn. 184, 147 A. 762 (Sup. Ct. Err. 1929), and annotation thereto in 66 A.L.R. 1134. In that case the court quoted from Greenland v. Chaplin, 5 Exch. 243, 115 Eng. R. 104, where the court said:
"`I entirely concur with the rest of the court that a person who is guilty of negligence, and thereby produces injury to another, has no right to say "Part of that mischief would not have arisen if you yourself had not been guilty of some negligence." I think that where the negligence of the party injured did not, in any degree, contribute to the immediate cause of the accident, such negligence ought not to be set up as an answer to the action; and certainly I am not aware that, according to any decision which has ever occurred, the jury are to take the consequences and divide them in proportion according to the negligence of the one or the other party.' Id.; Rigby v. Hewitt, 5 Ex. 240 [155 Eng. Reprint, 103]." (Emphasis added)
The annotation (at page 1135), in referring to Mahoney, points up the issue which this court believes is involved in a seat belt case:
"The decision indicates how sharply the distinction must be drawn between negligence contributing to the accident, and negligence contributing to the injuries sustained."
As to question number two, i.e., apportionment of damages so as to preclude plaintiff's recovering for such damages as may have been caused by his failure to use the seat belts, an entirely different principle is relevant. Restatement, Torts 2d, § 465, is headed: "Causal relation between harm and plaintiff's negligence." It reads:
*274 "(1) The plaintiff's negligence is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm and there is no rule restricting his responsibility for it.
(2) The rules which determine the causal relation between the plaintiff's negligent conduct and the harm resulting to him are the same as those determining the causal relation between the defendant's negligent conduct and resulting harm to others."
Comment (c) to this section reads as follows:
"In particular, the rules stated in Section 433A as to the apportionment of harm to different causes are applicable in cases of contributory negligence. Where the harm is single and indivisible, it is not apportioned between the plaintiff and the defendant, in the absence of a statute providing for such division of the damages upon an arbitrary basis. Where, however, there are distinct harms, or a reasonable basis is found for the division of a single harm, the damages may be apportioned, and the plaintiff may be barred only from recovery and so much of the harm as is attributed to his own negligence. Such apportionment is commonly made, under the damages rule as to avoidable consequences, where the plaintiff suffers an original injury, and his negligence consists in failure to exercise reasonable care to prevent further harm. See Section 918. The apportionment may, however, be made in other cases, as where, for example, the plaintiff has contributed to the pollution of a stream, along with one or more defendants.
Such apportionment may also be made where the antecedent negligence of the plaintiff is found not to contribute in any way to the original accident or injury, but to be a substantial contributing factor in increasing the harm which ensues. There must of course be satisfactory evidence to support such a finding, and the Court may properly refuse to permit the apportionment on the basis of mere speculation."
The last paragraph of that quotation is appropriate to the situation before this court in the sense that plaintiff's negligence, if any, in not using seat belts did not "contribute in any way to the original accident." Was it a "substantial contributing factor in increasing the harm" which ensued? Possibly so, but more to the target here is the last sentence of the comment quoted above. That puts before this court the question as to whether or not there is, in this case, "satisfactory evidence" to support a finding that the failure to use seat belts was a "substantial contributing factor increasing the harm" which plaintiff suffered. There is no such *275 evidence here. I am not now deciding how I would rule if there were here expert evidence to the effect that, if seat belts had been used by plaintiff, he would not have suffered the injuries which have been revealed in this testimony. Parenthetically, the court can see many difficulties in producing effective expert testimony to establish that fact. It would have to be based upon a hypothetical question of detailed specificity, strictly tailored to the facts proved with respect to the kind of seat belt used, its adjustment, the distance of the passenger from, let us say, the windshield, and many other imponderables which I would not attempt to fully envision here.[3] In any event, there is no such expert testimony in the record. But applying the last observation of the comment above (i.e., the court may properly refuse to permit the apportionment on the basis of mere speculation), the court finds that an attempt by the jury to apportion plaintiff's damages which were due to his failure to use seat belts, as against what injuries he would have suffered if the seat belts were used, would be the purest kind of speculation.
This is not an instance of the application of the "avoidable consequences" doctrine, where a plaintiff may not recover damages for injuries which he may have avoided. That doctrine applies when his carelessness occurs after defendant's legal wrong has been committed. Contributory negligence comes into action before defendant's wrong has been committed.[4]
Prosser on Torts (3d ed. 1964), § 64, pp. 433 and 434, after distinguishing the doctrine of "avoidable consequences" from the doctrine of "contributory negligence," says as to the former: "If no such division can be made, the plaintiff's negligence will bar all recovery. * * *" He then goes on to say: "In a limited number of situations, the plaintiff's unreasonable conduct, although it is prior or contemporaneous, *276 may be found to have caused only a separable part of the damage." We stress the word "separable."
And:
"In such a case, even though it is called contributory negligence, the apportionment will be made. This is true, for example, where plaintiff and defendant both pollute the same stream, or flood the plaintiff's property, or cause other damage similar in kind but capable of logical division. A more difficult problem is presented when the plaintiff's prior conduct is found to have played no part in bringing about an impact or accident, but to have aggravated the ensuing damages." (Id. at 433)
The latter problem is what is involved here. Prosser then says that in such a situation a Connecticut court refused to make any division. On the other hand, courts in Iowa and Kansas have apportioned damages, holding that plaintiff's recovery will be reduced to the extent that they have been aggravated by his own negligence. Prosser conceives this as the better view, but then he says:
"Cases will be infrequent, however, in which the extent of aggravation can be determined with any reasonable degree of certainty, and the court may properly refuse to divide the damages upon the basis of mere speculation." (Id. at 434)
That quotation is supported by many footnote citations.
The question of use of seat belts and the legal consequences of the failure to use them is a recent, very rapidly developing interest in the law. See 90 N.J.L.J. 263 (April 27, 1967); Mandel, "Automobile Seat Belts-Protection for Defendants As Well As Motorists," 38 So. Cal. L. Rev. 733 (1965); Roethe, "Seat Belt Negligence In Automobile Accidents," Wisc. L. Rev. (Winter, 1967) p. 288; Gagen, "Seat Belts: No Longer Why, But Why Not?", Today's Health (July 1960), p. 26; Garrett and Braunstein, "The Seat Belt Syndrome," 2 J. of Trauma, 220 (1962); Tourin and Garrett, "Seat Belt Effectiveness in Rural California Accidents," Automobile Crash Injury Research (Feb. *277 1960); "Stop Murder by Motor." ATLA Monograph (Jan. 1966), p. 9, and "For the Defense," Feb. 1966; "Ejection and Automobile Fatalities," 73 U.S. Public Health Reports, 381-83 (1958); Seat Belts: Safe or Hazardous, published by A.M.A.; 2 Trial, ATLA 36 (1966); Kleist, "The Seat Belt Defense-An Exercise in Sophistry," 18 Hastings L.J. 614 (1967); Blackburn, "Seat Belts and Contributory Negligence," 12 S.D.L. Rev. 130 (1967); Carnazzo & Flynn, "Failure to Use Seat Belts as a Basis for Establishing Contributory Negligence, Barring Recovery for Personal Injuries," 1 U. San Francisco L. Rev. 277 (1967); Levine, "Legal Problems Arising from Failure to Wear Seat Belts," Transcript, 20th Annual Convention, American Trial Lawyers Association at 519 (1966); and Nolan, "Motor Vehicles-A comparative Analysis of Seat Belt Legislation," 14 DePaul L. Rev. 152 (1964).[5]
As I have said, there are no reported New Jersey decisions bearing on the question. However, other states have had decisions involving the problem. In Lipscomb v. Diamiano, 226 A.2d 914 (1967), the Superior Court of Delaware held that evidence of the failure of an occupant of an automobile to use seat belts was not admissible. The court reviewed the decisions in Sams v. Sams, 247 S.C. 467, 148 S.E.2d 154 (Sup. Ct. 1966): Mortensen v. Southern Pacific Company, 245 Cal. App.2d 241, 53 Cal. Rptr. 851 (Cal. App. 1966); Brown v. Kendrick, 192 So.2d 49 (Fla. D. Ct. App. 1966); Kavanagh *278 v. Butorac, supra, and Rogers v. Race and Bierczynski, 141 C.A. 1966 (Del. Super. 1967).[6]
In Sams, supra, the South Carolina Supreme Court held only that on a motion to strike the pleading, a defense of contributory negligence based on the failure to use the seat belts should not be stricken. The court expressly stated that on such a motion it was not deciding the ultimate issues raised by the pleading. In Mortensen, supra, a Federal Employers' Liability Act case, the question as to whether defendant's failure to provide seat belts amounted to negligence by the employer in failing to supply the employee with a safe place to work, was held for the jury. In Brown, supra, the Florida District Court of Appeals granted a motion to strike the defense of contributory negligence based on failure to use available seat belts and upheld the denial of the trial court to permit evidence of the failure to use the belt. In Kavanagh, supra, the Appellate Court of Indiana refused to recognize that failure to use seat belts is contributory negligence as a matter of law. And I might say that in that case the record included expert testimony as to the effect of the use of the seat belts. The Appellate Court held that the fact-finder was at liberty to regard favorably or to disregard the testimony of the safety expert.
As the Delaware court said in Lipscomb, supra, only the Brown case had been authority for an absolute bar to receiving evidence of failure to use seat belts. Sams and Kavanagh supra, depend upon the particular evidence in each case in order to determine the admissibility of the evidence. Mortensen, supra, being an FELA case, stands in different context.
In Lipscomb the court, after reviewing the foregoing cases and stating that it was not unaware of the possibility that further research by safety committees may establish a *279 sound basis for consideration of the seat belt defense, went on to say that the question of automobile safety is one for concern of the Legislature. Adopting that approach, our Motor Vehicle Act, as we know, has many provisions dealing with equipment of motor vehicles and their use from which we may spell out considerations for the jury to consider in determining the exercise of due care.[7] These legislative enactments are adopted after opportunity for considerable investigation and hearings and call for a determination, legislative in nature, as to whether a particular piece of equipment is or is not advisable in terms of safety and, more particularly, whether the Legislature mandates that such equipment be used.[8] Now, however much any one of us might feel that seat belts are desirable as protective devices, we cannot say that we may take judicial notice of the fact that they are, at least to the extent of imposing a duty on a passenger to use them. The Legislature may, after some study, reach that determination. There are, at least, some arguments on the counter side that they are not as helpful as some may say. I do not feel that this court should reach such a legislative or scientific conclusion.[9]
*280 In Lipscomb the court further explored the question as to whether evidence of the use of seat belts should be permitted to the end of apportionment of damages and said:
"Assume that the trier of fact finds that the plaintiff's failure to use seat belts did aggravate the injuries, but cannot reasonably separate the injuries caused by the defendant and the self-imposed negligent aggravation of the plaintiff. According to Dean Prosser's analysis of the rule of avoidable consequences, `if no such division can be made, the plaintiff's negligence will bar all recovery, notwithstanding that it is subsequent in point of time to that of the defendant.' Prosser, Law of Torts, (3d ed.) § 64, p. 433. This result occurs notwithstanding the fact that the defendant's negligence was the sole proximate cause of the accident."
But, said the court in Lipscomb:
"This Court is not convinced that the extension of the doctrine of avoidable consequences to the seat belt situation is desirable. Indeed, the seat belt situation does not fit neatly into the doctrine at all because the alleged negligent act happens before any injury."
Lastly, Lipscomb dealt with the problem of conjecture, which this court considers a most compelling reason for its decision in this case. The Delaware court said:
"There is also the problem of conjecture mentioned in the Brown case, supra. Conjecture is a dangerous term often used to describe a pre-conceived notion. Certainly, the trier of fact deals with questions similar to the ones introduced by seat belts in dealing with proximate cause and future damages. But at least in such instances, the judgment deals with what did in fact happen or what is reasonably probable to happen. In the seat belt area, we are dealing with what would have happened, insofar as the extent of injury is concerned, if the seat belt had been used as well as what happened due to failure to use the seat belt. I am not saying that this involves a qualitative *281 difference from other trial questions. But it does seem to me that it involves an extreme extension of judgment which is required to be reasonable. This is especially true when one bears in mind that it is highly likely that expert testimony concerning the use of a seat belt can be adduced in unusual cases to support the argument that such use had a harmful result. This Court is not prepared to say that the problem which has been labeled `conjecture' can be lightly dismissed."
So here, there is no evidence in this case as to whether (a) the use of seat belts by plaintiff here would have prevented any particular movement of his body or impact of his face with the windshield or other part of the car, or (b) seat belts would, or would not have, produced more serious injuries.
This court is not unmindful of the fact that juries are permitted to engage in speculation, to a degree, on questions of damages. For example, future damages in a death case, and, to an extent, in comparative negligence cases under the Federal Employers' Liability Act. Also, apportionment of damages is permissible as between an original tortfeasor and physicians guilty of malpractice in treating the original injury, even though there may be some difficulty in apportioning damages as between the original tortfeasor and the negligent physicians.[10] That is not this problem. This is a single injury on the record here. There can be no division, on this record, of how much or to what extent certain injuries were due to the accident, the impact itself on the one hand, or the failure to use seat belts on the other. Such a theory of permitting apportionment here would approach the question as is done where comparative negligence is accepted. And as we know, New Jersey is not such a state. This case does not involve the separation of two effects, respectively due to one cause or to the other. At least, there is not enough proof here to support that division.
Defendant cites the case of Husted v. Refuse Removal Service, 26 Conn. Sup. 494, 227 A.2d 433 (Super. Ct. 1967). The case stands only for the proposition that a *282 motion addressed to pleadings on this question should be be denied. That is not the status of the case before this court. The state of the record, after all evidence is in, is devoid of expert proof as to the probable result had plaintiff used the seat belts. Again I am not saying what I would hold if there were expert testimony. In any event, the court feels that the result in Lipscomb, supra, has logical and practical appeal as precedent for application here, and the defense of contributory negligence insofar as it rests on plaintiff's failure to use seat belts will be stricken.
Now, with respect to plaintiff's motion for liability based upon defendant's negligence as a proximate cause of his injuries: the proofs are clear and uncontradicted, and reasonable men could not differ, that defendant driver was guilty of negligence which was a proximate cause of whatever injuries plaintiff suffered. Cermak v. Hertz Corp., 53 N.J. Super. 455 (App. Div. 1958) affirmed o.b. 28 N.J. 568 (1959).
Therefore, the court's order is:
(1) The defense of contributory negligence is stricken; and
(2) Judgment of liability in favor of plaintiff against defendant Coghan is entered.
There remains, then, the issue of damages alone for determination by the jury.
NOTES
[1] Judgment of dismissal has been entered in favor of defendant Coca Cola Co. at the end of plaintiff's case.
[2] Defendant urged one other ground in support of the defense of contributory negligence which is not relevant to the "seat belt" issue.
[3] See "The Seat Belt Defense," The Defense Research Institute, Inc., p. 15.
[4] See Kavanagh v. Bulorac, 221 N.E.2d 824 (Ind. Ct. App. 1966).
[5] See also, "Question Of Negligence In Failure To Use Seat Belts Up In Air," 90 N.J.L.J. 781 (1967); Annotation 15 A.L.R.3d 1428 (1967); Rick, "Failure to Wear Seat Belts as Contributory Negligence," 50 Marq. L. Rev. 662 (1967); Automobile Seat Belts, published by Cornell Aeronautical Laboratory; A Seat Belt Could Save Your Life, published by National Safety Council; Walker and Beck, "Seat Belts and Second Accidents," 34 Ins. Counsel J., 349 (July 1967); Defense Memo, "Seat Belt Liability," 7 For The Defense No. 2 (Feb. 1966); "Seat Belt Liability II," 7 For The Defense No. 6 (June 1966); "Seat Belt Liability III," 8 For The Defense No. 3 (Mar. 1967); "Seat Belts  A Common Law Duty," 8 For The Defense No. 6 (June 1967).
[6] See also Bentzler v. Braun, 34 Wisc.2d 362, 149 N.W.2d 626 (Sup. Ct. 1967); Cierpisz v. Singleton, 230 A.2d 629 (Md. Ct. App. 1967).
[7] N.J.S.A. 39:3-1 et seq.
[8] In 1965 New Jersey adopted an act requiring that no person shall sell or operate any passenger automobile manufactured after July 1, 1966, unless it be equipped with at least two sets of seat belts for the front seat of the automobile. N.J.S.A. 39:3-76.2. But see Cierpisz v. Singleton, supra, where the court held that, though a comparable Maryland statute required that motor vehicles manufactured after June 1, 1964 shall be equipped with seat belts, such a statutory provision does not create a duty to use the belt. To the same effect, see Bentzler v. Braun, supra; Roethe, "Seat Belt Negligence in Automobile Accidents," supra. However, in Bentzler the Wisconsin court, applying the comparative negligence rule applicable in that state, found a common law duty, in the exercise of ordinary care, to use available seat belts. In that case, however, the jury had found that the failure of the passenger to use the belts was not the cause of her injuries and therefore, there was no diminution of the damages recoverable by her.
[9] "* * * However, the social utility of using a seat belt is not clear. In spite of the overwhelming scientific evidence supporting the beneficial results of seat belt use, acceptance of the safety belt by the public has not been achieved. The social utility of wearing a seat belt must be established in the mind of the public before failure to use a seat belt can be held to be negligence. Otherwise, the court would be imposing a standard of conduct rather than applying a standard accepted by society. * * *" (Emphasis supplied) Roethe, "Seat Belt Negligence in Automobile Accidents," supra, quoted in Cierpisz v. Singleton, supra. See also Brown v. Kendrick and Lipscomb, supra.
[10] E.g., Knutsen v. Brown, 96 N.J. Super. 229 (App. Div. 1967).