Lester V. HALVORSON, Individually and as Guardian and Conservator of Kevin John Halvorson, Plaintiff and Appellee,

v.

Neil VOELLER and Robertson Companies, Inc., d/b/a Robertson-Gambles, Defendants and Appellants.

Civ. No. 10294.

Supreme Court of North Dakota.

June 24, 1983.

Richard A. Ohlsen (argued) and Jerome J. Mack, of Mack, Moosbrugger, Ohlsen & Dvorak, Grand Forks, and Alvin A. Anderson, of Davies, Pearson, Anderson, Seinfeld, Gadbow, Hayes & Johnson, Tacoma, Wash., for plaintiff and appellee.

James L. Lamb (argued) and Ralph F. Carter, of Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for defendants and appellants.

VANDE WALLE, Justice.

This is an appeal from an order of the district court, Grand Forks County, denying motions for judgment notwithstanding the verdict and for a new trial. We affirm the order denying judgment n.o.v. and reverse the order denying the motion for a new trial.

The motions were made following a jury trial in which the defendant, Neil Voeller, was found 92 percent negligent for causing an accident in which Kevin Halvorson, who was then 18 years old, was injured. The accident occurred when Voeller, who was stopped at a stopsign, moved north into an intersection toward which Halvorson was traveling from the west on a motorcycle he was operating. Before Voeller crossed the eastbound lane of traffic, Halvorson collided with the driver's side of the car Voeller was driving and was thrown from the motorcycle, which resulted in his suffering a severe brain injury. The jury awarded damages to Halvorson in the amount of $2,767,324.61. We affirm the jury's determination on the issue of liability, but we reverse for a redetermination on the issue of damages.

I

Prior to the trial, Voeller indicated an intention to present evidence to show Halvorson's head injuries would not have been so severe had he been wearing a helmet. In response, Halvorson made a motion in limine to prevent Voeller from presenting evidence of Halvorson's nonuse of a helmet on the issue of either liability or damages. Voeller argues that the court erred in granting the motion.

In its order denying Voeller's motion for a new trial, the trial court answered Voeller's contention that the court abused its discretion in not allowing testimony on Halvorson's failure to wear a helmet by saying:

"In the absence of legislation imposing a statutory duty for helmet usage for motorcycle riders over the age of eighteen,

1. Section 465 of 2 *Restatement of Torts* 2d, p. 510, states:

this Court finds that it would have been improper to establish a common law duty of care."

The court concluded with the statement:

"Just as evidence of use or non-use of seat belts is inadmissible, the evidence of use or non-use of motorcycle helmets is also inadmissible."

The obvious import of the court's response is that whether or not a qualified expert were prepared to testify that Halvorson's nonuse of a helmet increased the injuries he sustained, the proffered testimony would have been inadmissible as a matter of substantive law.

The precise question confronting us is whether or not the court's refusal to allow testimony of Halvorson's failure to wear a helmet was reversible error. We decide it was, but only as to the issue of damages.

■ Ordinarily, evidence of nonuse of a helmet has no relevance to the *issue of liability* for causing an *accident;* that is, seldom, if ever, will the fact that a person did not wear a protective helmet contribute to the cause of an accident. But cf. *Curry v. Moser,* 89 A.D.2d 1, 454 N.Y.S.2d 311 (1982). Nonuse of a helmet may, however, in many instances be a contributing cause to the *injuries* sustained, and therefore be relevant to the *issue of damages. Helmetless Motorcyclists—Easy Riders Facing Hard Facts: The Rise of the "Motorcycle Helmet Defense,"* 41 Ohio St.L.J. 233 (1980); cf. Note, *The Seat Belt Defense: A Comprehensive Guide for the Trial Lawyer and Suggested Approach for the Courts,* 56 Notre Dame Law. 272 (1980).

In this regard, Comment *c* to Section 465 of 2 *Restatement of Torts* 2d states that apportionment of harm to different causes may be made "where the antecedent negligence of the plaintiff is found not to contribute in any way to the original accident or injury, but to be a substantial contributing factor in increasing the *harm* which ensues."[1] [Emphasis added.]

"§ 465. Causal Relation Between Harm and Plaintiff's Negligence

Of three reported cases which discuss the "helmet defense," only one has followed the *Restatement* position and allowed testimony on helmet nonuse in apportioning damages. *Dean v. Holland,* 76 Misc.2d 517, 350 N.Y.S.2d 859 (1973). In the other two cases, the helmet defense was rejected. *Rogers v. Frush,* 257 Md. 233, 262 A.2d 549 (1970); *Burgstahler v. Fox,* 290 Minn. 495, 186 N.W.2d 182 (1971).

Similarly, the majority of courts that have considered the related issue of whether or not a person's failure to use an available seatbelt may be considered in mitigation of damages have decided to disallow testimony of seatbelt nonuse. E.g., *Britton v. Doehring,* 286 Ala. 498, 242 So.2d 666 (1970); *Insurance Co. of North Am. v. Pasakarnis,* 425 So.2d 1141 (Fla.Dist.Ct.App. 1982) [relying on the decision in *Lafferty v. Allstate Ins. Co.,* 425 So.2d 1147 (Fla.Dist. Ct.App.1982)]; *Hampton v. State Highway Comm.,* 209 Kan. 565, 498 P.2d 236 (1972); *Kopischke v. First Continental Corp.,* 610 P.2d 668 (Mont.1980); *Carnation Co. v. Wong,* 516 S.W.2d 116 (Tex.1974); *Amend v. Bell,* 89 Wash.2d 124, 570 P.2d 138 (1977). Even within the majority, however, there are differences of opinion. For example, in the decisions cited above from the courts of Florida, Montana, and Washington, there are vigorous dissents which argue that evidence that an available seatbelt was not used should be admissible on the issue of damages.

Although the courts which reject the seatbelt defense appear to constitute a clear majority, no small number of courts are in the minority: *Caiazzo v. Volkswagenwerk A.G.,* 647 F.2d 241 (2d Cir.1981); *Wilson v. Volkswagen of America, Inc.,* 445 F.Supp. 1368 (E.D.Va.1978); *Benner v. Interstate Container Corp.,* 73 F.R.D. 502 (E.D.Pa. 1977); *Pritts v. Walter Lowery Trucking Company,* 400 F.Supp. 867 (W.D.Pa.1975); *Franklin v. Gibson,* 138 Cal.App.3d 340, 188

Cal.Rptr. 23 (1982); *Wagner v. Zboncak,* 66 Ill.Dec. 922, 111 Ill.App.3d 268, 443 N.E.2d 1085 (1982); *Spier v. Barker,* 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164 (1974); *Sams v. Sams,* 247 S.C. 467, 148 S.E.2d 154 (1966); *Coryell v. Conn,* 88 Wis.2d 310, 276 N.W.2d 723 (1979). And see *Glover v. Daniels,* 310 F.Supp. 750 (N.D.Miss.1970); *Parise v. Fehnel,* 267 Pa.Super. 79, 406 A.2d 345 (1979); cf. *Garrett v. Desa Industries, Inc.,* 705 F.2d 721 (4th Cir.1983).

One of the major criticisms of considering a plaintiff's failure to use a safety device in mitigation of damages which has moved some courts to reject the helmet defense and a larger number of courts to reject the seatbelt defense is that the doctrine of mitigation of damages, sometimes called the doctrine of avoidable consequences, has been traditionally used by courts to reduce damages for injuries a plaintiff could have avoided or made less severe by reasonable conduct on his part *after* he has suffered an initial injury. E.g., *Rogers, supra,* 262 A.2d at 553. Where the failure to minimize injury is allegedly due to a person's nonuse of a helmet, the criticism is that the omission to wear a helmet is an act which occurred before, and not after, the plaintiff sustained an injury.

According to W. Prosser, *Handbook of the Law of Torts,* § 65, at 423–424 (4th Ed.1971), however, if damages are capable of reasonable apportionment to separate causes, it should make no difference whether the plaintiff's negligence in aggravating his injuries preceded or succeeded the defendant's negligence.

It can also be argued that use of the avoidable-consequences theory in a case where a plaintiff's injuries are increased by his failure to wear a helmet would place upon the plaintiff a pre-accident obligation to wear a helmet in anticipation of the defendant's negligence which in turn would

"(1) The plaintiff's negligence is a contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm and there is no rule restricting his responsibility for it.

"(2) The rules which determine the causal relation between the plaintiff's negligent conduct and the harm resulting to him are the same as those determining the causal relation between the defendant's negligent conduct and resulting harm to others."

deny the plaintiff the right to assume the due care of others toward him. Cf. *Lafferty, supra,* 425 So.2d at 1149–1150; *Amend, supra,* 570 P.2d at 143.

In response to the same argument made about a plaintiff's failure to use an available seatbelt, the court in *Spier* said:

"We concede that the opportunity to mitigate damages prior to the occurrence of an accident does not ordinarily arise, and that the chronological distinction, on which the concept of mitigation [of] damages rests, is justified in most cases. However, in our opinion, the seat belt affords the automobile occupant an unusual and ordinarily unavailable means by which he or she may minimize his or her damages *prior* to the accident. Highway safety has become a national concern; we are told to drive defensively and to 'watch out for the other driver'. When an automobile occupant may readily protect himself, at least partially, from the consequences of a collision, we think that the burden of buckling an available seat belt may, under the facts of the particular case, be found by the jury to be less than the likelihood of injury when multiplied by its accompanying severity." 363 N.Y.S.2d at 922, 323 N.E.2d at 168.

We believe this reasoning applies with equal force to a case in which nonuse of a safety helmet is considered in mitigation of damages. Accordingly, we adopt the position, amply supported by the decisions which accept the seatbelt defense, that evidence of a person's failure to wear a protective helmet while traveling on a motorcycle is admissible to reduce the plaintiff's damages so long as there is competent testimony by a qualified expert that the use of a helmet would have lessened the injuries the plaintiff sustained.

 We do not mean to say that whenever the defendant demonstrates by satisfactory evidence that the plaintiff's injuries would not have been so great had a safety

helmet been worn, the jury *must* reduce the plaintiff's damages in proportion to the amount of injury he could have avoided by wearing a helmet. Rather, it is the jury's function in the first instance to decide if a reasonable person exercising ordinary care would have worn a helmet to avoid or mitigate injury in the event of an accident. Only if (1) the jury answers this question in the affirmative, and (2) there is competent evidence establishing a causal connection between the plaintiff's failure to wear a helmet and the *injuries* he received, may the jury reduce damages to the extent that a helmet would have decreased the plaintiff's injuries. Cf. *Spier, supra,* 363 N.Y. S.2d at 919–920, 323 N.E.2d at 166–167. Furthermore, the defendant has the burden of proving (1) that a reasonably prudent person would have worn a safety helmet and (2) that the plaintiff's failure to wear a helmet increased his injuries. Cf. *Eichorn v. Olson,* 32 Ill.App.3d 587, 335 N.E.2d 774 (1975); *Spier, supra,* 363 N.Y.S.2d at 920, 323 N.E.2d at 167.

 A restatement of the position we adopt with respect to the helmet defense is that unless the facts of a particular case indicate the plaintiff's failure to wear a helmet was a contributing cause of the accident—which is highly inconceivable—the helmet defense is irrelevant to the issue of liability and should be limited to the issue of damages. If there is sufficient competent evidence to show that a plaintiff's injuries would have been less if he had worn a helmet, the court is warranted in charging the jury as follows:

If you find (1) it was unreasonable for the plaintiff to not wear a helmet, and (2) the plaintiff would not have received some or all of his injuries had he worn a helmet, then (3) the amount of damages awarded the plaintiff for the injuries he sustained must be reduced in proportion to the amount of injury he would have avoided by the use of a helmet.[2] The burden of proof on both (1) and (2) rests with the defendant.

---

**2.** A hypothetical set of facts will best serve to explain how mitigation of damages for contributing to the cause of an injury should operate under our law of comparative negligence.

Assume: X, driving a car, and Y, driving a motorcycle, get in an accident. Y is not wearing a helmet. The jury finds X is 60 percent liable for causing the accident, making Y, the

Cf. *Garrett, supra,* 705 F.2d at 726; *Spier, supra,* 363 N.Y.S.2d at 919, 323 N.E.2d at 166.

The question might arise whether or not the approach we take today on the issue of helmet nonuse in mitigation of damages is compatible with North Dakota's current legislation on helmet usage. Section 39–10.2–06, N.D.C.C., requires persons under 18 years of age to wear protective headgear while operating or riding upon a motorcycle. It ought not to be thought that because the Legislature has decided to not require motorcyclists 18 years of age and older to wear safety helmets, it implied there never can be a duty on the part of a motorcyclist to wear a helmet.

Although there is good authority for the proposition that a court may adopt as a standard of care the requirements of a legislative enactment designed to protect a specified class of persons [2 *Restatement of Torts* 2d, § 286 (1965)], it never has been suggested that a standard of care may be inferred from a statute which does not require the use of safety devices by a certain segment of society.

Simply because our Legislature has chosen to not make it a traffic violation for a person 18 or over to operate or ride upon a motorcycle without wearing a helmet does not mean it intended that in the exercise of ordinary care a motorcyclist never may be expected to wear a helmet to avoid or mitigate injuries he may sustain in an accident.[3] There is a difference between saying, "It is up to you to decide whether or not to wear a safety helmet," and saying, "You will

---

motorcyclist, 40 percent liable for causing the *accident.* The jury also finds Y would have avoided 60 percent of his injuries if he had worn a helmet; therefore, X is 40 percent liable for causing Y's *injuries.* Y proves $100,000 in damages.

On the basis of these findings, the $100,000 award should be reduced by 40 percent, which accounts for Y's contributing to the cause of the accident. Hence, the award is diminished to $60,000.

The $60,000 should now be reduced to the extent that Y's injuries would have been less had he worn a helmet, i.e., 60 percent. This adjustment leaves a total award of $24,000.

Another way to perform this second step in calculating Y's ultimate recovery would be to reduce the $60,000 by 60 percent of the entire $100,000 awarded as damages, i.e., by $60,000. See *Vizzini v. Ford Motor Co.,* 569 F.2d 754 (3d Cir.1977) (Weis, J., concurring and dissenting). We reject this method, however, because it would produce an unjust result in that even though X is 60 percent at fault for causing the accident and 40 percent accountable for Y's injuries, X has to pay Y nothing for compensation.

We realize there is no exact mathematical formula which can be created to accomplish complete justice in awarding damages. At the same time, we believe a jury should be permitted, in a case where the use of a helmet would have prevented some or all of the plaintiff's injuries, (1) to find that in the exercise of ordinary care a person would have worn a protective helmet in providing for his safety, and (2) to reduce the plaintiff's award of damages, in a proportionate way, to the extent he would have avoided or mitigated the injuries he sustained by using a helmet. The formula we propose for accomplishing this result has the desired fea-

ture of never leaving the plaintiff without a recovery unless, of course, his liability for causing the accident is equal to or greater than 50 percent [see Section 9–10–07, N.D.C.C.], or unless wearing a helmet would have avoided 100 percent of the injuries he received.

**3.** It is apparent that in requiring persons under 18 years of age to wear protective headgear, the Legislature determined the headgear would aid in reducing injuries. That determination is not negated because no similar requirement is present for persons over 18 years of age. Prior to 1977 all motorcycle operators and riders were required to wear protective headgear except when participating in a lawful parade. See 1975 N.D.Sess.Laws, Ch. 348, § 14. The requirement was enacted in 1967. See 1967 N.D.Sess.Laws, Ch. 322, § 1. This court in *State v. Odegaard,* 165 N.W.2d 677 (N.D.1969), construed the 1967 enactment and determined there existed a real and substantial relationship between the exercise of the police powers contained in the protective-headgear statute and the public health, safety, and welfare. In 1977 the North Dakota Legislature amended Section 39–10.2–06, N.D.C.C., to its present form, in which only persons under 18 years of age are required to wear protective headgear. See 1977 N.D.Sess.Laws, Ch. 355, § 3. Our review of the legislative history of that bill (HB 1442) does not indicate the Legislature reversed its position to conclude that headgear would not aid in reducing injuries to persons 18 years of age or over; rather, it appears from the testimony before the committees which considered this bill that an individual 18 years of age or over should be permitted to decide whether or not to wear protective headgear. Our decision today does not alter the opportunity for such

never, under any circumstances, have to suffer legal consequences for not wearing a helmet."[4]

Just as there is no absolute duty, with respect to persons 18 and over, to wear helmets, even in mitigation of damages, there is no absolute guarantee that nonuse of a helmet never can be found to be unreasonable. This is to say no more than that just as omission to wear a helmet is not negligence as a matter of law, neither is omission to wear a helmet non-negligence as a matter of law. Cf. *Pasakarnis, supra,* 425 So.2d at 1146 (Schwartz, J., dissenting).

We do not believe the helmet defense is exclusively a matter for the Legislature. A reasoned application of well-recognized principles of tort law easily leads to the conclusion that a jury should be permitted to consider whether or not plaintiff's failure to wear a helmet may have been a substantial factor in bringing about his harm, and whether or not in the exercise of ordinary care a person would have worn a helmet to avoid or mitigate any injuries he might sustain in an accident.

## II

Voeller raises numerous other issues for our consideration, but after careful examination we find them to be either (1) without merit, or (2) unnecessary to address because of our particular disposition of the case.

The trial court's refusal to permit evidence of Halvorson's nonuse of a helmet on the issue of damages was reversible error. See Rule 61, N.D.R.Civ.P. Accordingly, we reverse the order denying the motion for a new trial and remand the case to the district court for a new trial on the issue of damages.

ERICKSTAD, C.J., and PEDERSON, SAND and PAULSON, JJ., concur.

---

individuals to make that decision. However, those persons who decide to not wear protective headgear bear the consequences of that decision if they are injured, if they bring actions for their injuries, and if it is determined that protective headgear would have reduced those injuries.

4. Interestingly, the Minnesota Legislature has in effect said just this about the nonuse of an available seatbelt. M.S.A. § 169.685, subd. 4, states:
 "Subd. 4. Proof of the use or failure to use seat belts or a child passenger restraint system as described in subdivision 5, or proof of the installation or failure of installation of seat belts or a child passenger restraint system as described in subdivision 5 shall not be admissible in evidence in any litigation involving personal injuries or property damage resulting from the use or operation of any motor vehicle."
 In the area of helmet legislation, its approach is different. Minnesota's helmet statute, M.S.A. § 169.974, in subd. 4, is similar to North Dakota's in that it requires only persons under the age of 18 to wear protective headgear while operating or riding upon a motorcycle. The section further provides, however, in subd. 6:
 "Subd. 6. *Negligence; damages without protective headgear.* In an action to recover damages for negligence resulting in any head injury to an operator or passenger of a motorcycle, evidence of whether or not the injured person was wearing protective headgear of a type approved by the commissioner shall be admissible only with respect to the question of damages for head injuries. Damages for head injuries of any person who was not wearing protective headgear shall be reduced to the extent that those injuries could have been avoided by wearing protective headgear of a type approved by the commissioner. For the purposes of this subdivision 'operator or passenger' means any operator or passenger regardless of whether that operator or passenger was required by law to wear protective headgear approved by the commissioner."