Lorena NUNEZ, et al., Plaintiff,

v.

**SCHNEIDER NATIONAL CARRIERS, Inc., et al., Defendants.**

**Civ. No. 99–4541(WGB).**

United States District Court, D. New Jersey.

Sept. 5, 2002.

---

William R. Stuart, III, Sills Cummis Radin Tischman Epstein & Gross, Newark, NJ, for Plaintiffs.

William D. Bierman, Nowell Amoroso Klein & Bierman, P.A., Hackensack, NJ, for Defendants.

## OPINION

BASSLER, District Judge.

Defendants trucking company and driver move, *in limine*, to introduce evidence of decedent's failure to wear a helmet while riding her bicycle when she was allegedly struck by Defendants' truck and fell to her death as proof of decedent's comparative negligence in order to reduce damages. Plaintiffs also move, *in limine*, to preclude any evidence of decedent's failure to wear a helmet. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds $75,000. For the fol-

lowing reasons, Defendants' motion is **granted** and Plaintiffs' motion is **denied**.

## I. BACKGROUND

### A. Factual Background

On August 19, 1997, at approximately 9:00 p.m., Julie Nunez ("Decedent") died in a tragic bicycle accident. Decedent had been riding her bicycle in a northerly direction along River Road in Edgewater, New Jersey, along with her friend, Irvin Sessoms, when she fell from her bicycle to her death. The autopsy revealed that the cause of death was injury to the head.

Around the same time, the defendant, Ronald Louis Jackson ("Jackson"), was driving an orange, 18 wheel, tractor-trailer combination in a northerly direction on River Road. His truck was stopped by police approximately one or two miles north of the scene of the accident shortly after 9:00 p.m.

Sessoms, who had been riding behind decedent at the time of accident, was the only eye-witness. According to Sessoms, an orange 18-wheel, tractor-trailer struck decedent on her left arm, causing her to fall from her bicycle to her death.

Plaintiff then brought this wrongful death action against Jackson and his employer, Schneider National Carriers, alleging that Jackson's negligent operation of the truck was the cause of decedent's death. Defendants dispute liability: Jackson denies ever seeing decedent on the road or being involved in any accident.

Nevertheless, Defendants contend that if a jury were to find them liable, the amount of damages should be reduced to the extent that decedent's own negligence contributed to her death.

### B. Procedural Background

This action was removed to this Court from the Superior Court of New Jersey, Hudson County on September 24, 1999. Following the completion of discovery, Defendants moved for summary judgment, which motion was denied by this Court. The matter was set to begin trial on Tuesday, July 16, 2002.

Defendants now move to introduce evidence that decedent's failure to wear a helmet contributed to her injuries and, therefore, any damages awarded to plaintiff should be reduced by decedent's comparative fault. Plaintiffs move separately to exclude any evidence of helmet nonuse for purposes of proving comparative negligence to reduce damages.

On Monday, July 15, 2002, the Court heard oral argument from the parties on these motions.

## II. DISCUSSION

In diversity actions such as this, when deciding an issue of state law, the Court must determine which state's law to apply. This court looks to New Jersey's choice of law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), which provides that the applicable law is that of the place with the most significant relationship to the parties and the transaction. *Erny v. Estate of Merola*, 171 N.J. 86, 792 A.2d 1208 (2002). Under this analysis, it is undisputed that New Jersey law controls. The decedent lived in New Jersey and this lawsuit arose out of an accident that occurred in Edgewater, New Jersey.

The Court, therefore, turns to New Jersey law regarding the admissibility of evidence of a decedent's failure to wear a helmet while riding a bicycle on a roadway where motorized vehicles travel for the purpose of reducing damages. Because no New Jersey state court has addressed the issue of the helmet defense, the Court must predict what the New Jersey Su-

preme Court would decide on this issue. *Commissioner of Internal Revenue v. Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *Gruber v. Owens–Illinois, Inc.*, 899 F.2d 1366 (3d Cir.1990).

█ Initially, the Court notes that evidence of failure to wear a helmet generally has no relevance on the issue of liability, since such failure rarely contributes to the cause of an accident.[1] *See, e.g., Meyer v. City of Des Moines*, 475 N.W.2d 181, 186 (1991). Failure to use a helmet may, however, be a contributing cause to the injuries sustained and so may be relevant to the issue of damages. *Id.*

Many courts addressing the so-called "helmet defense" as an issue of first impression have drawn upon their state's application of the more commonly asserted and well established "seat belt defense." *See, e.g., Stehlik v. Rhoads*, 253 Wis.2d 477, 645 N.W.2d 889 (2002) (principles applicable to seat belt defense also govern helmet defense); *Meyer v. City of Des Moines*, 475 N.W.2d 181, 186 (Iowa 1991) (failure to wear helmet analogous to issue of failure to use seat belt); *Warfel v. Cheney*, 157 Ariz. 424, 758 P.2d 1326 (Ariz. App.1988)(same principles apply to both seat belt nonuse and helmet nonuse).

In *Cordy v. Sherwin Williams Co.*, 975 F.Supp. at 648, a district court in New Jersey found the seat belt analogy not very useful. The court reasoned that unlike the New Jersey law requiring the use of seat belts in cars, no law existed requiring the use of helmets on bicycles. Similarly, there was no law for bicycles like the federal law mandating that cars come equipped with seat belts. The *Cordy* court found these disparities to be an implicit recognition by the legislature that riding a

bicycle was not as dangerous as driving a car.

This Court does not find the rationale of the *Cordy* court persuasive. The suggestion that riding a bicycle without a helmet is any less dangerous than driving a car without a seat belt is not convincing. A bicyclist sharing a road with motorized vehicles is often exposed to greater danger than the driver of a car on that same road. In the event of an accident, the driver of a car is at least shielded from direct impact by the outer shell of the car, whereas a bicycle offers no such protection.

The *Cordy* court's reliance on the absence of a mandatory seat belt law for adults is likewise unpersuasive. Although the New Jersey legislature does not require the use of helmets by bicyclists over the age of 14, *see* N.J.S.A. 39:4–10.1, there is legislation in place which serves to encourage the voluntary use of bicycle helmets. For example, retail sellers are required to affix to bicycles a statement promoting the use of helmets by bicycle riders. N.J.S.A. 39:4–14.4a. Additionally, pursuant to statute, the Director of the Division of Consumer Affairs in the Department of Law and Public Safety is required to promulgate rules and regulations, including one providing that warning cards be made readily available at cost to retail sellers of bicycles stating "This Bike Is Missing One Part." N.J.S.A. 39:4–14.7a.

█ Moreover, helmets, like seat belts, are protective devices, widely known to aid in the reduction or prevention of death or injury from accidents. This Court takes judicial notice (Fed.R.Evid.201) of the well documented efficacy of helmets in reducing or preventing death or injury from bicycle

---

1. There is no contention in this case that decedent's failure to wear a helmet was a proximate cause of the accident. Therefore, this Court need not address the question of whether evidence of failure to wear a helmet can be presented on the issue of liability.

accidents. *See Waterson v. General Motors Corp.*, 111 N.J. 238, 544 A.2d 357 (1988) (taking judicial notice of the effectiveness of seat belts in reducing death and injury from automobile accidents).

Here, uncontradicted studies conducted by various national agencies reveal that helmets significantly reduce the incidence of death from head injury, which is the leading cause of bicycling fatalities. It has been reported that anywhere from 70 to 85 percent of all fatal bicycle crashes involve head injuries. Nat'l Hwy. Traffic Safety Admin., *State Legislative Fact Sheet* (April 2002); *see also* National Safety Council, *Fact Sheet Library: Enjoy Safe Bicycling*, http:// www.nsc.org/library/facts/bicycle. htm (last visited July 11, 2002). According to the National Highway Traffic Safety Administration (NHTSA) at the U.S. Department of Transportation, "[b]icycle helmets are 85 to 88 percent effective in mitigating head and brain injuries, making the use of helmets the single most effective way to reduce head injuries and fatalities resulting from bicycle crashes." U.S. Dept. Of Trans. Nat'l Hwy. Traffic Safety Admin., *State Legislative Fact Sheet* (April 2002); *see also* Bicycle Helmet Safety Institute ("BHSI"), *A Compendium of Statistics from Various Sources*, http:// www.bhsi.org/stats.htm (last visited July 11, 2002). Indeed, numerous organizations, including the NHTSA, the BHSI and the National Safety Council promote the use of helmets by all cyclists. *Id.; see also* Nat'l Safety Council, *Fact Sheet Library: Enjoy Safe Bicycling*, http:// www.nsc.org/library/facts/bicycle.htm (last visited July 11, 2002).

At this juncture, the effectiveness of helmets in reducing death and injury from bicycle accidents cannot reasonably be disputed: wearing a helmet on a bicycle, like wearing a seat belt in a car, can prevent or reduce accident related injuries and fatalities. It is, therefore, appropriate to examine the genesis of the seat belt defense in New Jersey for purposes of the availability of a helmet defense.

Because New Jersey law controls, this Court turns to New Jersey law. In *Waterson*, 111 N.J. 238, 544 A.2d 357, the New Jersey Supreme Court addressed the issue of whether a motorist's failure to wear a seat belt could serve to reduce damages in a strict liability action. It is critical to recognize that while at the time *Waterson* was decided, New Jersey law required motorists to wear seat belts when driving, *see* N.J.S.A. 39:3–76.2(f),[2] the court was called upon to determine what the law was in 1980, at a time when "the law required that automobiles be equipped with seat belts, but there was no law requiring occupants to *use* the belts." *Waterson*, 111 N.J. at 262, 544 A.2d 357 (emphasis added).

Similarly, no law currently exists requiring the use of helmets by adult bicyclists. Rather, adults are free to make their own decisions as to whether or not to wear a helmet. Additionally, although no New Jersey law requires that bicycles be equipped with helmets, the public policy expressed in the legislature's helmet laws does encourage the voluntary use of helmets. See N.J.S.A. 39:4–10.1, 39:4–14.4a, 39:4–14.7a.

In deciding whether to adopt the seat belt defense, the *Waterson* court carefully and approvingly considered New Jersey state court decisions prior to the enactment of the New Jersey mandatory seat belt law. At the time, only three New Jersey state courts had addressed the issue. *Id.* at 263, 544 A.2d 357. In discuss-

---

**2.** On November 8, 1984, Governor Kean signed the Passenger Automobile Seat Belt Usage Act, making the wearing of a seat belts in passenger cars mandatory in New Jersey.

ing *Barry v. Coca Cola,* 99 N.J.Super. 270, 239 A.2d 273 (Law Div.1967), the court observed:

> The court adopted the position articulated in the Restatement (Second) of Torts § 465 (captioned "causal Relation Between Harm and Plaintiff's Negligence") that the courts will apportion damages in contributory negligence cases only where the evidence supports a finding that plaintiff's negligence was a 'substantial contributing factor' to the injuries ultimately sustained.

*Waterson,* 111 N.J. at 252–53, 544 A.2d 357.

The court went on to quote relevant sections of the Restatement, including Comment c to § 465, which states, in pertinent part:

> Such apportionment may also be made where the antecedent negligence of the plaintiff is found not to contribute in any way to the original accident or injury, but to be a substantial contributing factor in increasing the harm which ensues. There must of course be satisfactory evidence to support such a finding, and the court may properly refuse to permit the apportionment on the basis of mere speculation.

Restatement (Second) of Torts § 465, Comment c (1965).

The court further observed that

> Ultimately, the court in *Barry* refused to admit seat belt evidence primarily because defendant had not proffered any 'satisfactory evidence that plaintiff's failure to use a seat belt was a substantial contributing factor increasing the harm' plaintiff suffered.

*Waterson,* 111 N.J. at 253, 544 A.2d 357.

Following *Barry,* the New Jersey Superior Court in *Polyard v. Terry,* 148 N.J.Super. 202, 372 A.2d 378 (Law Div.1977), recognized the possibility that failure to wear a seat belt could be shown through evidence to have substantially contributed to the injury, but found that such evidence had not been established. It was not until *Dunn v. Durso,* 219 N.J.Super. 383, 530 A.2d 387 (Law Div.1986), that "a New Jersey court found for the first time the necessary circumstances for applying the seat-belt defense in a negligence action." *Waterson,* 111 N.J. at 255, 544 A.2d 357. Ultimately, in *Waterson,* the New Jersey Supreme Court upheld the seat belt defense as relevant in assessing damages, but found that only those damages avoidable by the use of a seat belt could be reduced as a result of seat belt nonuse. *Id.* at 272, 544 A.2d 357.

In addition to its review of state law, the *Waterson* court examined decisions from foreign jurisdictions that had considered the issue. *Waterson,* 111 N.J. at 258–59, 544 A.2d 357 (citations omitted). Noting that the legislatures in many of those states had gone so far as to reject the admissibility of seat belt evidence or to limit the percentage of fault that could be attributed to the nonuse of a seat belt, the *Waterson* court observed that the New Jersey legislature had not yet taken that step. *Id.* at 259, 544 A.2d 357. It then concluded that "[a]lthough other courts [had] deferred to their legislatures to resolve [the seat belt defense] question," the New Jersey Legislature had "left to the judiciary the resolution of the seat belt issue." *Id.* at 262, 544 A.2d 357 (citations omitted). Similarly, the New Jersey legislature has not taken that step to reject or limit the admissibility of helmet evidence but left to the courts resolution of that issue.

Courts across the nation are divided on the issue of the admissibility of helmet evidence. The majority of courts addressing the issue have, for assorted reasons, rejected the admissibility of helmet evi-

dence to reduce damages. *Cordy v. Sherwin Williams Co.,* 975 F.Supp. 639 (D.N.J. 1997); *Meyer,* 475 N.W.2d at 191; *Dare v. Sobule,* 674 P.2d 960, 962–63 (Colo.1984); *Hukill v. DiGregorio,* 136 Ill.App.3d 1066, 1067–68, 92 Ill.Dec. 64, 484 N.E.2d 795 (1985); *Bond v. Jack,* 387 So.2d 613, 616 (La.App.1980); *Rogers v. Frush,* 257 Md. 233, 240–44, 262 A.2d 549 (1970); *Burgstahler v. Fox,* 290 Minn. 495, 496, 186 N.W.2d 182 (1971).

Some courts have rested their rejection of the helmet defense on the ground that neither Congress nor their state legislatures had passed a law requiring the use of helmets. *See, e.g., Cordy,* 975 F.Supp. at 647. For example, the *Cordy* court concluded that because no law in New Jersey required the use of helmets by adults, a reasonable person would not be on notice that failure to wear a helmet could be considered legally unreasonable and serve to prejudice his or her legal rights. *Id.* This line of reasoning, however, has been subject to considerable criticism.

While an act of the legislature may sometimes create a duty of care, legislative inaction does not necessarily translate into the absence of a duty. One court observed:

> Although there is good authority for the proposition that a court may adopt as a standard of care the requirements of a legislative enactment designed to protect a specified class of persons [2 *Restatement of Torts* 2d, § 286 (1965)], it never has been suggested that a standard of care may be inferred from a statute which does not require the use of safety devices by a certain segment of society.

*Halvorson v. Voeller,* 336 N.W.2d 118 (N.D.1983)

That the New Jersey legislature has not made it an offense for an adult to ride a bicycle without wearing a helmet does not necessarily mean that it intended that in the exercise of ordinary care an adult bicyclist never may have an obligation to wear a helmet to avoid foreseeable injuries. As the *Halvorson* court pointed out, "there is a difference between saying, 'It is up to you to decide whether or not to wear a safety helmet,' and saying, 'You will never, under any circumstances, have to suffer legal consequences for not wearing a helmet.'" *Id.*

Moreover, as set forth above, there is a demonstrable link between wearing a helmet and minimizing injuries. The New Jersey legislature has enacted legislation obviously recognizing this fact. Permitting evidence of helmet nonuse in order to reduce damages also serves to encourage the voluntary use of helmets, thereby furthering the statutory objectives in this area. Indeed, given the well documented efficacy of helmets in reducing injuries and preventing death, and the legislature's recognition of this fact, the absence of legislation requiring adults to wear helmets serves not as a basis for precluding but for admitting evidence of their nonuse at trial to reduce damages.

The New Jersey Supreme Court has already determined that adoption of the seat belt defense was not precluded by the absence of a statute requiring adults to wear seat belts. *Waterson,* 111 N.J. 238, 544 A.2d 357. Therefore, this Court sees no reason to deny the helmet defense simply because Congress has failed to adopt it.

The *Cordy* Court's concern about adequate notice does not find support in *Waterson.* Moreover, New Jersey's Comparative Negligence Act provides adequate notice that "[a]ny damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering." N.J.S.A. 2A:15–5.1–5.3. The

doctrine of mitigation of damages (also known as the doctrine of avoidable consequences), generally reduces damages by the extent to which plaintiff's *antecedent* negligence contributes to the harm suffered. Some courts have found this doctrine to be inapplicable to the helmet situation, where the failure to wear a helmet occurred *prior* to the accident. *See Rogers v. Frush,* 257 Md. 233, 262 A.2d 549 (1970).

■ The doctrine of mitigation of damages, however, can sometimes apply to pre-accident conduct. *Halvorson,* 336 N.W.2d at 121; *Warfel,* 157 Ariz. at 428, 758 P.2d 1326. Most important for this analysis is the fact that the highest court in New Jersey determined that "[c]omparative negligence contemplates the inclusion of all relevant factors in arriving at appropriate damages awards," including the failure to wear a seat belt. *Waterson,* 111 N.J. at 264, 544 A.2d 357. It then concluded that "modified principles of comparative fault should apply to reduce a plaintiff's recovery for seat-belt damages." *Id.*

■ Because of the *Waterson* court's analysis in arriving at the availability of the seat belt defense, this Court concludes that evidence of plaintiff's failure to wear a helmet may go directly to the jury as evidence of comparative fault. Applicable here is Justice Garibaldi's language in *Waterson:*

> Public policy and simple fairness dictate that we allow defendants to present the issue of seat belt use to juries where defendant introduces satisfactory evidence that plaintiff's failure to use a seat belt increased the extent or severity of plaintiff's injuries. Thus, while we con-

clude that seat belt nonuse is not a bar to a strict liability recovery, we also conclude that juries may reduce an injured party's recovery on the basis of such evidence under certain circumstances.

*Waterson,* 111 N.J. at 270, 544 A.2d 357.

In addition, the jury should feel free to consider other factors, such as the availability of a helmet, where plaintiff was riding her bicycle at the time of the accident, the prevailing custom of helmet use at the time of the accident and any other factor relevant to whether plaintiff acted as a reasonably prudent person in not wearing a helmet. Cf. *Waterson,* 111 N.J. at 266, 544 A.2d 357.

The existence of a duty to wear a helmet, however, is not dispositive. *See id.* at 266, 544 A.2d 357. Other courts have permitted evidence of nonuse of a helmet on the question of damages, so long as there is evidence establishing that the plaintiff's failure to wear a helmet actually contributed to his or her injuries. *See e.g., Warfel v. Cheney,* 157 Ariz. 424, 427, 758 P.2d 1326 (Ariz.App.1988); *Halvorson v. Voeller,* 336 N.W.2d 118, 119 (N.D.1983); *Dean v. Holland,* 76 Misc.2d 517, 518–19, 350 N.Y.S.2d 859 (1973). In *Warfel,* the Arizona Court of Appeals, despite the absence of a statute, found that evidence of a motorcyclist's [3] failure to use a helmet was relevant to the issue of damages. However, defendants were required to produce evidence showing what portion of the injuries sustained by plaintiff was attributable to helmet nonuse in order to reduce the amount of damages.

---

3. The *Cordy* court questioned the relevance of the motorcycle helmet analogy on the grounds that it was "obvious that riding a motorcycle is far more dangerous than riding a bicycle." *Cordy,* 975 F.Supp. at 648. Such a proposition, much like the suggestion that driving is more dangerous than riding a bicycle, is entirely unfounded, particularly in situations where bicycles are sharing roads with motorized vehicles.

Most courts agree that the existence of a duty is not dispositive. According to the New Jersey Supreme Court,

> the fact finder should determine whether an injured party's nonuse of a seat belt should serve to reduce that party's recovery and not simply whether the party's conduct has met an established general standard of care. The jury should be free to take into account the prevailing custom of seat belt use at the time of the accident. Such evidence is relevant to the jury's determination of whether an injured party acted as a reasonably prudent person in not wearing a seat belt. We are persuaded that allowing the jury to determine whether the evidence established that failure to use an available seat belt contributed to producing plaintiff's damages best comports with principles of fairness and is consistent with the principles of comparative negligence followed in this state.

*Waterson*, 111 N.J. at 266–67, 544 A.2d 357.

In other words, the jury must engage in a two step inquiry. It must first decide whether a reasonable person exercising ordinary care would have worn a helmet to avoid or mitigate injury in the event of an accident. If the answer is yes, it must next decide whether the evidence establishes that failure to wear a helmet contributed to the severity of the injuries. Only then may the jury reduce damages to the extent that a helmet would have decreased the injuries suffered. Cf. *Waterson*, 111 N.J. at 272, 544 A.2d 357 (same as to seat belts).

The New Jersey Supreme court recognized that "underlying the law of comparative negligence is the notion that every person has an obligation to exercise reasonable care for his or her own safety." *Waterson*, 111 N.J. at 267, 544 A.2d 357. Accordingly, it "is only fair that each per-

son only pay for injuries he or she proximately caused," and not those injuries that could have been avoided through use of a safety device (such as a helmet). *Id.* at 267–68, 544 A.2d 357.

It is not difficult for this Court to conclude that the New Jersey Supreme Court would find that where a defendant introduces satisfactory evidence that a plaintiff's failure to wear a safety helmet increased the extent or severity of plaintiff's injuries, the defendant should be permitted to present the helmet defense to the jury.

### III. *CONCLUSION*

For the foregoing reasons, Defendants' motion to introduce evidence of decedent's failure to wear a helmet is admissible to prove decedent's comparative negligence in order to reduce damages is **granted**. For the same reasons, Plaintiffs' motion to exclude such evidence is **denied**.